**Emma K. GASSMAN and Julius Gassman, her husband, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 84-3606.**

United States Court of Appeals, Eleventh Circuit.

Aug. 16, 1985.

Mary McElroy Leach, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant-appellant.

Christopher W. Wickersham, Daytona Beach, Fla., for plaintiffs-appellees.

Before GODBOLD, Chief Judge, TJO-FLAT, Circuit Judge, and SIMPSON, Senior Circuit Judge.

GODBOLD, Chief Judge:

This is an appeal by the United States from a judgment in a bench trial finding it liable to Emma Gassman for damages caused when she contracted encephalitis after being vaccinated against swine flu in 1976. 589 F.Supp. 1534 (M.D.Fla.1984). Gassman had sought compensatory damages against the government under the Swine Flu Act, 42 U.S.C. § 247b(j) (1982), pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, et seq. (1982). We affirm.

### FACTS

In November of 1976 appellee went to the Naval Reserve Training Center in Daytona Beach, Florida, to receive a swine flu inoculation. After arriving at a vaccination clinic operated by the Volusia County Health Department, appellee received a form which she was instructed to complete. That form, while containing information about the risks associated with the swine flu vaccine, said nothing about the risk, if any, of contracting encephalitis after re-

ceiving the vaccination.[1] Gassman was never told of such a risk by anyone administering the vaccine.

Gassman was inoculated and subsequently developed a series of health problems eventually diagnosed by a neurologist, Dr. Kenneth Derbenwick, as symptomatic of viral encephalitis. Dr. Derbenwick linked her illness to the swine flu vaccine.

Appellee brought suit in 1979. Her action was transferred as multi-district litigation to the District of Columbia for consolidated pretrial proceedings,[2] and was later remanded to the District Court, MD Florida, in 1980. A bench trial on the merits was held in October of 1983. At trial appellee introduced the expert testimony of Dr. Derbenwick as evidence of a causal link between viral encephalitis and the swine flu vaccine. The government relied upon the testimony of Dr. Peter Dunne as evidence to the contrary. No expert testified live as to the adequacy of the warning given appellee (or the consent obtained) prior to her inoculation, but the depositions of experts taken in connection with the consolidated pre-trial proceedings were introduced by Gassman as proof that an informed consent was not obtained because the warnings given were inadequate.

After hearing and evaluating all the evidence, the district court held that the United States was liable to Gassman for damages, finding that the flu vaccine had

caused her to contract encephalitis and that the government had not obtained an informed consent from her before administering the vaccination. *See Gassman v. U.S.,* 589 F.Supp. 1534 (M.D.Fla.1984). On appeal the government raises the issue of informed consent.

## DISCUSSION

### I. *Governing legal principles.*

On appeal, for the first time, the United States contends that the plaintiff is not entitled to a judgment in her favor because at trial Gassman failed to provide any expert medical testimony as to the risks of the vaccination that would have been disclosed by a reasonable medical practitioner in her community. While Gassman did introduce the depositions of experts who testified as to what should have been disclosed under, essentially, a national standard of care, none of those experts testified as to the appropriate standard for disclosure in the same or similar Florida community.[3] This failure, argues the United States, requires reversal.

The government did not, however, object on relevancy grounds (or on any other grounds) to introduction of the depositions at trial. In its motion for a directed verdict the government also did not raise the issue of lack of requisite expert testimony, and

---

**1.** The district court noted that it was unclear from the evidence exactly which form she received. The court found, however, that it was unimportant because the two forms were identical in all respects material to the case.

**2.** Decisions of the Judicial Panel on Multidistrict Litigation transferring swine flu cases are reported. *See In re Swine Flu Immunization Products Liability Litigation,* 464 F.Supp. 949 (J.P.M.L.1979); 453 F.Supp. 648 (J.P.M.L.1978); 446 F.Supp. 244 (J.P.M.L.1978).

**3.** Government liability under the Swine Flu Act and the FTCA is determined by the law of the state where the allegedly tortious act or omission occurred. *See Daniels v. U.S.,* 704 F.2d 587 (11th Cir.1983).

Florida law states that a doctor does not breach his duty to obtain an informed consent when "the action of the physician ... in obtain-

ing the consent of the patient ... [is] in accordance with an accepted standard of medical practice among members of the medical profession with similar training and experience in the same or similar medical community...." Florida Medical Consent Law, Fla.Stat.Ann. § 768.-46 (West Supp.1983).

Under Florida courts' construction of the statute, physicians are held to the same standard of care as others with similar expertise practicing in Florida communities of similar size and with similar resources. *See, e.g., Ritz v. Florida Patient's Compensation Fund,* 436 So.2d 987 (5th DCA Fla.1983).

The government contends that the district court found liability under an incorrect interpretation of Florida law since the court in essence held the United States to a more stringent national, rather than local, standard of care.

in its post-trial memorandum to the court did not raise the issue.

 We decline to consider the issue under these circumstances where appellant had at least three opportunities to raise the issue before the district court and did not do so. *See, e.g., Steelmet, Inc. v. Caribe Towing Corp.*, 747 F.2d 689 (11th Cir.1984); *Allen v. State of Alabama*, 728 F.2d 1384 (11th Cir.1984). For the same reason we also do not address the government's second contention, also raised for the first time on appeal, that Gassman's testimony that she would have refused the vaccination had she been fully informed was insufficient and irrelevant as evidence of what a reasonable person would have done if fully informed.[4]

### II. *District court's findings.*

 The district court, sitting as the trier of fact, found that the government negligently failed to warn Gassman of the risks associated with the swine flu vaccine, and thus did not obtain from her an informed consent to the vaccination.

These findings of fact are reviewed under the clearly erroneous standard. *See, e.g., American National Bank v. Federal Deposit Insurance Corp.*, 710 F.2d 1528 (11th Cir.1983). The court's findings are not clearly erroneous, and we will not disturb the judgment for appellee.

AFFIRMED.

---

4. Under Florida law a plaintiff is not entitled to recover damages absent a showing that a reasonable patient, who has been adequately warned of the vaccine's risks, would not have consented to the inoculation. *See* § 768.-46(2)(b). The "reasonable patient" standard is an objective test. *Cf. Ritz v. Florida Patient's Compensation Fund, supra.*