Rita Patricia **KEEFE**,
Plaintiff–Appellee,

v.

**BAHAMA CRUISE LINE, INC.**, a Foreign Corporation,
Defendant–Appellant.

No. 88–3334.

United States Court of Appeals,
Eleventh Circuit.

March 15, 1989.

David F. Pope, Tampa, Fla., for defendant-appellant.

Edward F. Gerace, Kass, Hodges & Massari, Tampa, Fla., for plaintiff-appellee.

Before RONEY, Chief Judge, HATCHETT, Circuit Judge, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

On June 2, 1984, plaintiff-appellee Rita Patricia Keefe boarded the S/S Vera Cruz, a cruise ship owned by defendant-appellant Bahama Cruise Line, Inc. ("BCL"), embarking on a two-day "Cruise to Nowhere." During the early hours of June 4, while dancing at the ship's outdoor discotheque, Keefe slipped and fell on a wet spot, sustaining personal injuries. Though unable to straighten her back, she did not report the incident or the slippery condition on the dance floor to any member of the ship's crew, nor did she seek medical treatment while at sea. Instead, she quietly debarked later that morning, several hours after the ship had docked in Tampa, Florida.

Continuing to experience pain as a result of her spill, Keefe visited first a chiropractor and later an orthopedic surgeon. In the fall of 1984, she retained an attorney. The lawyer, Saxton Gaskin, III, wrote to BCL on May 14, 1985, demanding a settlement of Keefe's damages. In response, BCL's claims manager, Allison Styskal, called Gaskin, informing him that Keefe had executed a release of liability in favor of BCL and that the company had paid Keefe's medical bills in full. In addition, Styskal assured Gaskin that she would send him copies of the release and the checks.

The passage contract ticket for the voyage—which Keefe had carried during the cruise and subsequently retained—contained a consensual limitation of actions against BCL or the Vera Cruz. Specifically, the contract provided that suits against the carrier or cruise ship would be maintainable only if brought within one year of the date of injury. Although Gaskin knew that Keefe continued to hold the passage contract and was mindful of its time restriction for filing suit, he had neither obtained the ticket from Keefe nor filed a lawsuit when the time for instituting an action expired on June 4, 1985. Instead, Gaskin investigated Styskal's statements to determine the status of his client's claim. Unable to verify either that Keefe had signed a release or that BCL had paid any bills on her behalf, Gaskin sent Styskal a second letter, dated July 26, 1985, describing the outcome of his inquiry and repeating the earlier demand for settlement. Gaskin threatened to file suit within three weeks unless he received a favorable response from the carrier.

Months passed without a word between the parties. Finally, by letter dated October 31, 1985, Styskal informed Gaskin that Keefe's claim against BCL was barred by virtue of the contractual limitation. On November 15, 1985, Keefe initiated this action in a Florida state court. Shortly thereafter, BCL removed the case to the United States District Court. The district court conducted a bench trial on March 15, 1988. It found in favor of Keefe and awarded her $7,000.00 in damages. 682 F.Supp. 1191.

On appeal, BCL challenges the district court's determinations that (1) the carrier negligently maintained the ship's dance floor and (2) Styskal's conduct estopped BCL from asserting the contractual limitation period as a defense to this action. For the reasons that follow, we vacate the judgment and remand this action to allow the district court to make further findings of fact essential to the resolution of the issues presented.

■ As a preliminary matter, we note that the substantive law applicable to this action, which involves an alleged tort committed aboard a ship sailing in navigable waters, is the general maritime law, the rules of which are developed by the federal courts. *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 628, 79 S.Ct. 406, 408, 3 L.Ed.2d 550, 553 (1959); *Kornberg v. Carnival Cruise Lines, Inc.,*

741 F.2d 1332, 1334 (11th Cir.1984), *cert. denied,* 470 U.S. 1004, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985); see U.S. Const. art. III, § 2, cl. 1; 28 U.S.C. § 1333 (1983). The same principles would have governed the outcome of this case had it remained in the state court in which it originally was brought,[1] or had the parties invoked the district court's original maritime jurisdiction, rather than alleging diversity of citizenship as the jurisdictional basis for the suit. *Kermarec,* 358 U.S. at 628, 79 S.Ct. at 408, 3 L.Ed.2d at 553.

Keefe contends that we are constrained by Rule 52(a), Fed.R.Civ.P., to restrict the scope of our review of the district court's finding of negligence, setting it aside only if clearly erroneous. The rule protects findings of fact made by a district court in any case tried without a jury. In this circuit, whether a party was negligent constitutes a question of fact. *Gassman v. United States,* 768 F.2d 1263, 1266 (11th Cir.1985); *Hercules, Inc. v. Stevens Shipping Co.,* 765 F.2d 1069, 1073 (11th Cir. 1985); see *Doe v. United States,* 718 F.2d 1039, 1042 (11th Cir.1983) ("Foreseeability is a question of fact."). Nonetheless, BCL urges us to review de novo the district court's finding, because negligence is an ultimate fact. See *Alabama Power Co. v. Local Union No. 1333, Laborers' Intern. Union of North America,* 734 F.2d 1464, 1468 (11th Cir.1984) (reviewing court may independently determine ultimate facts). The Supreme Court's interpretation of rule 52(a) compels us to reject BCL's request. According to the Court,

> Rule 52(a) broadly requires that findings of fact not be set aside unless clearly erroneous. It does not make exceptions or purport to exclude certain categories of factual findings from the obligation of a court of appeals to accept a district court's findings unless clearly erroneous. It does not divide facts into categories; in particular, it does not divide findings of fact into those that deal with "ultimate" and those that deal with "subsidiary" facts.

*Pullman–Standard v. Swint,* 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66, 78–79 (1982); see *Doe,* 718 F.2d at 1042. Therefore, we apply the clearly erroneous standard to the district court's finding of negligence. But we must first ascertain, as a legal matter, the correct standard of care against which a shipowner's conduct must be measured. See *Complaint of Paducah Towing Co.,* 692 F.2d 412, 422 (6th Cir.1982). In determining the appropriate standard of care, we are free to review the district court's conclusion. *Id.; Daley v. United States,* 792 F.2d 1081, 1085 (11th Cir.1986); see *Hercules,* 765 F.2d at 1074.

We begin our analysis by consulting *Kermarec,* 358 U.S. at 632, 79 S.Ct. at 410, 3 L.Ed.2d at 555, in which the Supreme Court, expounding on maritime law, held "that the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." (Footnote omitted.) In refusing to relax the standard of care owed by a shipowner to a social guest who had boarded the vessel to visit a member of the crew, the Court declined to introduce into admiralty law the common law concepts of status—licensee and invitee—long used to define a landowner's duty. However, the Court did not discard status concepts from the law of maritime torts, carefully qualifying its holding with the observation that in admiralty "the meaningful categories are quite different." *Id.* at 632 n. 9, 79 S.Ct. at 410, n. 9, 3 L.Ed.2d at 555, n. 9. Thus, *Kermarec* left open the question whether the shipowner's duty of reasonable care in all the circumstances—instead of a more exacting standard—would be applicable in passenger cases as well.

The former Fifth Circuit Court of Appeals found that passengers too fell within the scope of the shipowner's duty of reasonable care. *Gibboney v. Wright,* 517 F.2d 1054, 1059 (5th Cir.1975). The Second Circuit Court of Appeals followed the Fifth, rejecting the historical rule that obli-

---

1. State courts have concurrent jurisdiction over actions grounded in general maritime law by virtue of the "saving to suitors" clause in § 1333(1).

gated ocean carriers to exercise a "high," a "very high" or the "highest" degree of care to ensure the safety of their passengers. *Rainey v. Paquet Cruises, Inc.,* 709 F.2d 169, 172 (2d Cir.1983). *Rainey* is practically indistinguishable from the present case. There, the plaintiff tripped over a stool while dancing "exuberantly" in the cruise ship's discotheque. The district court trying the case entered a judgment in favor of the carrier, because the plaintiff had not proved "how the stool got where it was or how long it had been there." On appeal, the plaintiff attacked the district court's finding that the shipowner had not been negligent, contending that it should have held the carrier to a higher standard than that of reasonable care under the circumstances. But the court of appeals affirmed, elaborating on the reasonable care formula as follows:

> The extent to which the circumstances surrounding maritime travel are different from those encountered in daily life and involve more danger to the passenger, will determine how high a degree of care is reasonable in each case. In the absence of any proof that [the shipowner] had actual or constructive notice of the presence of the stool, a condition in no way peculiar to maritime travel, the district court did not err in dismissing the complaint.

*Id.* at 172.

The Second Circuit recently decided another case strikingly similar to the case at bar. In *Monteleone v. Bahama Cruise Line, Inc.,* 838 F.2d 63 (2d Cir.1988), the court of appeals reversed the district court's judgment in favor of the plaintiff, who had tripped over a protruding screw and tumbled down a flight of stairs aboard the cruise ship Vera Cruz. Because the protruding screw was not a hazard unique to maritime travel, the court of appeals declared that, under the circumstances, BCL would have discharged its duty by exercising ordinary reasonable care. Therefore, BCL's liability properly turned on whether it had actual or constructive notice of the unsafe condition. Because all agreed that BCL had not been put on actual notice of the danger, the crucial question

was whether the shipowner ought to have known of the peril to its passengers, the hazard having been present for a period of time so lengthy as to invite corrective measures. But the district court had made no findings on the notice issue, and the circuit court's review of the record revealed no evidence to support an inference of constructive notice. Thus, "the district court erred as a matter of law in holding that merely *allowing* the screw to protrude constituted [negligence, a decision which] incorrectly made BCL an insurer of [the plaintiff's] safety." *Id.* at 65 (emphasis in original).

This court also has stressed that "[a] carrier by sea ... is not liable to passengers as an insurer, but only for its negligence." *Kornberg,* 741 F.2d at 1334. Accordingly, we hold that the benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where, as here, the menace is one commonly encountered on land and not clearly linked to nautical adventure. BCL's liability thus hinges on whether it knew or should have known about the treacherous wet spot.

■ Although the trial court did find that the dance floor was slippery and sticky on the night of the accident, and that passengers patronizing the nearby bar frequently ferried drinks across the dance floor, giving rise to an inference that a spilled drink may have created the slippery spot encountered by Keefe, the district court made no express finding as to how long the particular unsafe condition at issue here existed prior to Keefe's mishap. Consequently, the question becomes not whether the district court's finding of negligence was clearly erroneous, but rather whether we should review that finding at all. See S. Childress & M. Davis, 1 Standards of Review § 2.11, at 65 (1986). This is because application of the appropriate legal standard requires factual findings which are missing from the district court's

memorandum opinion. While we accept as not clearly erroneous the trial court's findings that a wet spot existed and that Keefe slipped on it, the absence of a finding concerning notice precludes meaningful review of the found fact respecting negligence. The proper course in this instance is to remand for additional fact finding by the district judge, an outcome consistent with the Supreme Court's instructions:

> When an appellate court discerns that a district court has failed to make a finding because of an erroneous view of the law, the usual rule is that there should be a remand for further proceedings to permit the trial court to make the missing findings [.]

*Swint,* 456 U.S. at 291, 102 S.Ct. at 1791, 72 L.Ed.2d at 81.

In addition to denying that it breached its duty of care, BCL maintains that this action was not timely filed according to the suit limitation provisions in the passage contract, and it questions the district court's application of equitable estoppel to thwart BCL's defense. Without question, Keefe brought this action many months after the limitation period provided for in the passage contract ticket had expired. To avoid the consensual time bar, Keefe maintained that BCL should be estopped from setting up the contractual restriction as an absolute defense, because, according to Keefe, the delay in bringing suit resulted from (her attorney) Gaskin's reliance upon (BCL claims manager) Styskal's misrepresentations regarding the status of Keefe's claim.[2] After hearing the testimony of both Gaskin and Styskal, the district court sided with Keefe, finding that "[t]he statements made by Ms. Styskal were not true and served to confuse and delay the presentation of Plaintiff's claim.... Mr. Gaskin would have filed suit within one year of the date of injury except for the misrepresentations made to him regarding the settlement of the claim." Accordingly,

the district court held that BCL was estopped from raising the contractual limitation on the time for commencing legal action as a defense to Keefe's claim. BCL attacks the district court's conclusion on two fronts, arguing that (1) the evidence does not support an estoppel and (2) assuming BCL's conduct gave rise to an estoppel, Keefe may not invoke the doctrine to save her suit because she failed to timely file suit following discovery of the deception, a second delay unrelated to any misdeed of BCL. We consider these contentions in turn.

Whether the established facts give rise to an estoppel is a question of law reviewable on appeal. *Teamsters Local 348 Health & Welfare Fund v. Kohn Beverage Co.,* 749 F.2d 315, 319 (6th Cir.1984), *cert. denied,* 471 U.S. 1017, 105 S.Ct. 2024, 85 L.Ed.2d 305 (1985); *Prize Steak Products, Inc. v. Bally's Tom Foolery, Inc.,* 717 F.2d 367, 370 (7th Cir.1983); *cf. Southwest Industrial Import & Export, Inc. v. Wilmod Co., Inc.,* 524 F.2d 468, 470 n. 3 (5th Cir.1975) (question of waiver is a conclusion of law not subject to restricted review applicable to factual findings). However, the constituent elements of estoppel constitute questions of fact, and the district court's findings on these matters must be upheld unless clearly erroneous. *Kohn Beverage Co.,* 749 F.2d at 319.

The doctrine of equitable estoppel "has frequently been employed to bar inequitable reliance on statutes of limitations." *Glus v. Brooklyn Eastern Dist. Terminal,* 359 U.S. 231, 233, 79 S.Ct. 760, 762, 3 L.Ed.2d 770, 772 (1959) (footnote omitted). The principle—which is based upon "the maxim that no man may take advantage of his own wrong," *id.* at 232, 79 S.Ct. at 762, 3 L.Ed.2d at 772—applies with equal force where, as here, the limitation is contractual rather than statutory, there being "no essential difference between" the two, *Kornberg,* 741 F.2d at 1337. To successfully

---

2. Keefe does not challenge the validity of the contractual limitation. This particular provision is consistent with 46 U.S.C.App. § 183b (1983), which permits parties to agree to limit the time for filing a suit seeking to recover for death or personal injury from a shipowner to a

period no shorter than one year. Such provisions generally are valid, provided that the ticket adequately brings them to the passenger's attention. *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1335 (11th Cir.1984).

invoke the doctrine, the late arriving plaintiff must show that she

> was misled by defendant or its agents so that [s]he delayed suit because of (a) an affirmative statement that the statutory period to bring the action was longer than it actually was, or (b) promises to make a better settlement of the claim if plaintiff did not bring suit or (c) comparable representations and conduct.

*Burke v. Gateway Clipper, Inc.*, 441 F.2d 946, 949 (3d Cir.1971) (footnotes omitted); *see also Atkins v. Union Pacific Railroad Co.*, 753 F.2d 776, 777 (9th Cir.1985); *Sanchez v. Loffland Bros. Co.*, 626 F.2d 1228, 1231 (5th Cir.1980), *cert. denied*, 452 U.S. 962, 101 S.Ct. 3112, 69 L.Ed.2d 974 (1981).

■ Part (c) in the foregoing list of estoppel-creating deceptions is a catch-all encompassing all manner of conduct analogous to the rather specific examples set forth in parts (a) and (b). Contemplated by the broad third category is the behavior described by the district court, namely, that BCL, through its claims manager, falsely stated to Keefe's attorney that it had secured a release of liability from Keefe and had paid her medical bills in full. Moreover, the district court found that reliance upon these representations resulted in confusion and delay, causing Keefe's claim to be filed after the contractual deadline had passed. The record supports these factual findings by the district court, and Keefe therefore has proved the elements needed to create an estoppel.

Our inquiry does not end here, however, because BCL's second challenge raises important questions about the duration of an estoppel and a plaintiff's obligation to timely file once the circumstances inducing delay have been discovered. BCL insists that estoppel does not excuse overlong procrastination on the plaintiff's part. Rather, goes the argument, the plaintiff's obligation to timely file is revived upon discovery, actual or constructive, of the misrepresentations responsible for the delay. Thus, according to BCL, the estoppel becomes ineffective after a period of time, measured from the date the plaintiff notices (or should notice) the deception, equal to the period by which the defendant's conduct reduced the time for bringing suit.

By assuming that the estoppel period in this case began to run on May 14, 1985—at which time Gaskin sent the first demand letter to BCL—BCL calculates that its conduct diminished the one-year period in which to bring suit by at most three weeks.[3] BCL further assumes that Keefe became aware of Styskal's misrepresentations no later than July 26, 1985—the day on which Gaskin wrote the second letter to Styskal exposing the claims manager's representations as untruths.[4] Consequently, BCL contends that Keefe's claim, to be timely, needed to have been brought by mid-August, 1985, within three weeks of July 26, 1985. Under this view, Keefe's failure to file until November 15, 1985, constituted a second delay not attributable to reliance on BCL's conduct. Thus, BCL urges that the estoppel should not be deemed effective to prevent it from asserting a defense based upon the contractual limitation of actions.

■ We agree with BCL that a defendant, as a result of conduct causing the plaintiff to delay filing suit, should not be permanently estopped from raising a limitation period as a defense. Such a theory would forgive procrastination on the plaintiff's part, permitting the prosecution of stale claims. Only laches would bar aged suits, the burden of proving unreasonable delay and actual prejudice falling on the defendant. See *Ott v. Midland–Ross Corp.*, 600 F.2d 24, 32 (6th Cir.1979). Once the circumstances inducing reliance are exposed, the plaintiff's obligation to timely file is reimposed. This court previously

---

**3.** In fact, Styskal's statements, which were made in response to Gaskin's first letter, necessarily occurred after May 14, although the district court did not specify the actual date on which Styskal misled Gaskin. Thus, the actual diminution of the limitation period was less than three weeks.

**4.** Gaskin testified that, contrary to the second letter's contents, he in fact had not disproved Styskal's statements as of the mailing date of that letter. The district court did not resolve this inconsistency.

embraced a related rule, commenting, in dicta, that where " 'there is still ample time to institute the action within the statutory period after the circumstances inducing delay have ceased to operate, a plaintiff who failed to do so cannot claim an estoppel.' " *Kazanzas v. Walt Disney World Co.,* 704 F.2d 1527, 1531 (11th Cir.), *cert. denied,* 464 U.S. 982, 104 S.Ct. 425, 78 L.Ed.2d 360 (1983) (quoting 51 Am.Jur.2d *Limitation of Actions* § 437, at 903).

But contrary to the position pressed upon us by BCL, we believe that the period within which the plaintiff must file following discovery of the defendant's wrongdoing can, in a proper case, be greater than the portion of the time for filing suit which remained as of the date on which the conduct occurred which gave rise to the estoppel. *Cf. Ott,* 600 F.2d at 34 n. 12. In our view, the plaintiff should be afforded a reasonable time after discovery in which to bring an action, a flexible standard consistent with equitable principles. Our position finds support in *Ott,* in which the Sixth Circuit Court of Appeals, analyzing an untimely action brought by a former employee against his former employer under the Age Discrimination in Employment Act, adhered "to the equitable standard of a reasonable time measured from the discovery date." *Id.* at 33. The court believed "that where relief from the statute of limitations is sought on the basis of fraud or misrepresentation, reference to the applicable limitations period established by the Congress provides a reliable and consistent statutory determination of reasonableness." *Id.* Accordingly, the court concluded that the plaintiff "was at least entitled to the full amount of time allowed by Congress for the commencement of his action, undiminished by any period of time" during which he delayed filing his suit in reliance upon the defendant's misrepresentations. *Id.* The court emphasized that it was establishing a minimum period in which to file suit and expressly authorized future plaintiffs "to prove that the remaining unexpired period was not a 'reasonable time' in which to bring suit." *Id.* at 34 n. 12.

We are not called upon in this case to decide whether an estoppel *must* continue beyond the cessation of the circumstances which created it until the unused portion of the limitation period expires. Therefore, we express no opinion on that point. Rather, we hold that estoppel is not lost to the plaintiff who, after discovering a delay-inducing deception, filed suit after the remaining unexpired limitation period had run, provided the plaintiff shows that the action was brought within a reasonable time. Reasonableness, of course, is a function of the facts and circumstances of the case. Naturally, the unused portion of a limitation period constitutes a significant circumstance to be evaluated in assessing the plaintiff's punctuality. But it does not, we reiterate, impose a limit on the length of time which may be deemed reasonable.

As indicated by the foregoing, the inquiry regarding whether an action was filed within a reasonable time after the plaintiff removed the veil of the defendant's deception is essentially a factual one. After again consulting *Swint,* 456 U.S. at 291–92, 102 S.Ct. at 1791–92, 72 L.Ed.2d at 81–82, we feel that the district court is the appropriate forum in which to resolve this issue. On remand, the district court should determine when the period of deception began and when Keefe discovered, or should have discovered, that BCL had misled her. Then the district court will be able to calculate the unexpired portion of the limitation period and measure the length of the second delay, those few months which preceded the filing of this lawsuit but which followed Gaskin's letter of July 26, 1985, the date which appears to us to have marked the end of the deception period. A comparison of these two time periods will aid the district court in answering the reasonableness question. Naturally, the district court should consider the circumstances surrounding the second delay, particularly the extent to which the defendant's conduct was responsible for it, as well as the plaintiff's diligence in taking action subsequent to the time when she knew of the false impressions created by BCL. If on remand the district court determines that the plaintiff did not file this action within a reasonable period of time follow-

ing discovery of the defendant's misconduct, then Keefe should not be permitted to rely upon estoppel to prevent BCL from raising the contractual limitation period as a defense to this action. Conversely, if the court finds that the action was filed within a reasonable time period, then BCL may not assert the limitation provision in the passage contract ticket.

Accordingly, the judgment of the district court is VACATED and the action REMANDED for further proceedings consistent with this opinion.