**Rita Patricia KEEFE, Plaintiff,**

v.

**BAHAMA CRUISE LINE, INC., Defendant.**

No. 86–12–CIV–T–17(C).

United States District Court,
M.D. Florida,
Tampa Division.

July 17, 1989.

Edward F. Gerace, Tampa, Fla., for plaintiff.

David F. Pope, Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., for defendant.

### SUPPLEMENTAL MEMORANDUM OPINION

KOVACHEVICH, District Judge.

This cause of action is before the Court on remand from the Eleventh Circuit Court of Appeals. On March 31, 1988, this Court issued a memorandum opinion which found:

---

1) that Defendant was estopped from asserting the passage contract ticket limitations argument based on equity and good conscience; 2) that Defendant breached its duty of care and was negligent in maintaining the area of the ship where Plaintiff's injury occurred; 3) that Plaintiff was entitled to reimbursement of medical costs in the amount of $3,657.60; 4) that Plaintiff was not entitled to lost wages from January 1985, to January 1, 1988; and 5) Plaintiff was entitled to damages of $3,300.00 for lost wages for the period June 4 to December 31, 1984, and $3,700.00 for pain and suffering.

On March 15, 1989, mandate issued April 12, 1989, the court of appeals remanded the cause to this Court to: 1) make necessary additional findings of fact as to how long the particular unsafe condition existed prior to the incident in question and as to whether or not Defendant knew or should have known of the condition causing the accident and 2) as to the equitable estoppel issue, a) determine when the period of deception began, b) determine when Plaintiff discovered, or should have discovered that Defendant had misled her; c) calculate the unexpired portion of the limitations period; d) measure the length of the second delay; e) compare the two time periods; and e) determine the reasonableness of the delay in filing the action. The appellate court directed this Court to include in its consideration of the equitable estoppel issue the circumstances surrounding the second delay, and, if the delay is found to be unreasonable, Plaintiff should not be allowed to rely upon estoppel to defeat the limitations issue. 867 F.2d 1318.

The case was reopened on April 19, 1989, and the parties were directed to notify the Court as to whether or not they contended further evidentiary proceedings were necessary. The parties agreed that they were not; therefore, pursuant to the Court's order, they filed supplemental memoranda of law on the issues on remand on May 16, 1989, and June 1, 1989. Defendant's supplemental memorandum addresses only the issue of the reasonableness of delay in filing suit.

## DEFENDANT'S KNOWLEDGE OF UNSAFE CONDITIONS

■ In the memorandum opinion of March 31, 1988, the Court made the following findings of fact relevant to the conditions existing at the time of Plaintiff's injury:

8. At the time of the injury, the area was a place where passengers were invited by Defendants to dance. There was a bar where alcoholic beverages were sold. The dance floor was a grey color. According to Defendant, it was painted with non-skid paint, and was surrounded with green indoor/outdoor carpet. (Depo. H. Teuben, pg. 15). However, Plaintiff's witness, Roger Bishop, testified that the steel deck did *not* have a non-skid surface; that on both evenings he had found the dance floor area treacherous for leather soles, and, that it was dirty; and, that at the time of the incident, moisture from the June night was present. There were lounge chairs in the area around the dance floor. The only portion of the floor that may have had a canopy over it was the area of the bar and immediately adjacent to the bar. Plaintiff was dancing in an open area away from the bar, and near the carpeted surface.

9. On the night of the accident, the dance floor was slippery and sticky. Patrons of the bar often carried their drinks across the dance floor, the inference being that these drinks were spilled on the dance floor. In fact, Plaintiff stated that the dance floor had been sticky from the first night and everyone had been dancing cautiously. To the best of Plaintiff's knowledge the dance floor had not been cleaned since she boarded the ship.

10. The weather that night was moderate, warm with a damp night air. There was no rain that night; in fact, Plaintiff recalled that it did not rain at any time during the cruise.

The Court credits the testimony of Roger Bishop, as to the condition of the dance area at the time of the accident, over that of Captain Teuben, who was not the captain of the ship at the time of the accident.

Indeed, Captain Teuben was not aboard the vessel in any capacity during that period of time.

Based on the evidence and the previously made findings of fact, the Court concludes that the construction of the dance floor, untreated steel and the prevailing conditions, as testified to by Plaintiff and Roger Bishop, created a dangerous condition. The Court further concludes that the condition of the dance floor was or should have been apparent to Defendant, as it has been in the same condition for the duration of the cruise, as testified to by both Plaintiff and Roger Bishop. Therefore, the Court finds Defendant liable for the injury to Plaintiff, because they knew, or should have known, of the existing conditions which were the cause of the injury.

## EQUITABLE ESTOPPEL

The appellate court remanded this issue to the Court with specific questions that must be addressed in order to determine the issue of the reasonableness of Plaintiff's delay in filing suit for the injury incurred.

Plaintiff's injury occurred June 4, 1984. The passenger ticket purchased for Plaintiff contained a provision which required suit for personal injury to be filed within one year of the date of injury. Suit was filed on November 15, 1985, in the Circuit Court in and for Hillsborough County, Florida.

On or about May 14, 1985, Plaintiff's attorney Saxton R. Gaskin, III wrote Defendant concerning the claim. Shortly thereafter, but before the expiration of the one year limit of June 4, 1985, Defendant's claims manager Allison Styskal telephoned Mr. Gaskin and advised him that Plaintiff had given them a release of liability and that her medical bills had been paid in full. The Court finds that the period of deception began at the time of this telephone call.

There is no testimony in the record as to the exact date of the call so the Court must interpolate a date for the beginning of the period of deception. Plaintiff's letter was sent on May 14, 1985, by mail to Defendant in New York from Mr. Gaskin's Clear-

water, Florida office. The Court, in line with Rule 6, Fed.R.Civ.P., finds that delivery of Plaintiff's letter occurred no earlier than May 17, 1989, which was a Friday. Based on reason, the Court finds that the phone call to Mr. Gaskin most likely occurred no earlier than Monday, May 20, 1989.

The Court therefore finds the period of deception started on or about May 20, 1985. At the time of the beginning of the period of deception, there were fifteen (15) days remaining in the one (1) year limitations period provision provided for by Plaintiff's passenger ticket.

The next question to resolve, is when did Plaintiff discover, or should have discovered, that she had been misled by Defendant. Mr. Gaskin testified that following his conversation with Ms. Styskal he expected to receive documentation from Defendant and that additionally he was contacting his client, who was moving and did move to Tennessee, and, Plaintiff's doctor, to confirm what he had been told as to the release and satisfaction of medical bills.

On July 26, 1985, Gaskin wrote a letter to Defendant wherein he stated that no release had been signed nor had the medical bills been paid. He further stated that he demanded that Defendant contact his office within three (3) weeks or he would file suit. Mr. Gaskin testified that at that time he was still investigating the matter, since he had no definitive evidence of the existence of a release; but he was also getting some conflicting information from Dr. Gar's office. Then on October 31, 1985, Ms. Styskal wrote him and informed him that Defendant's position was that Plaintiff's claim was then time-barred. Until this time there had been no change in Defendant's position originally related to Mr. Gaskin that the claim was settled by Plaintiff execution of a release and by payment in full of medical bills.

The Court upon due consideration finds that Plaintiff was reasonably attempting to confirm the allegations of Defendant that the case was settled until October 31, 1985, when Defendant made it clear by letter that it's position had changed and that it then maintained that the claim was time-

barred. Until that time, although Plaintiff's attorney thought that he had been deceived, there was no clear proof of the deception. If Plaintiff's counsel had filed suit without complete investigation of the surrounding circumstances, Plaintiff's counsel might have been subject to sanctions pursuant to Rule 11, Fed.R.Civ.P.

Plaintiff filed suit in this cause on November 15, 1985, fifteen (15) days after the October 31, 1985, letter which the Court has found to be the incident which notified Plaintiff of the deception. The time period is identical to the time for filing suit that was remaining to Plaintiff at the start of the period of deception.

The Court finds that the delay in filing suit in this cause was reasonable and was caused by Defendant's deceptions. Plaintiff's counsel diligently tried to confirm the allegations of settlement. Defendant did not cooperate by either providing documentation of their claims of settlement (certainly because such proof did not exist) or by acknowledging that it was mistaken and that there had been no settlement prior to the expiration of the time-bar.

Plaintiff's counsel acted reasonably in trying to confirm or disprove Defendant's claims so that on signing any complaint he could comply with Rule 11, and, state that to the best of his knowledge and belief, formed after "reasonable inquiry", that the complaint was "well-grounded" in fact and warranted by existing law. It was Defendant's deceptive actions and failure to cooperate which set the stage for Plaintiff's delay in exercising her rights in this case. It is Defendant who must bear the result of its own "unclean" hands approach to Plaintiff's accident and injuries.

### CONCLUSIONS OF LAW

1. The Court finds that Defendant knew, or should have known, of the conditions which created the risk and resulted in injury to Plaintiff on June 4, 1984.

2. The Court further finds that Plaintiff's delay in filing suit in this cause of action was reasonable in the circumstances, which were created and prolonged by Defendant's deceptive actions. Therefore, the Court finds Defendant is estopped from asserting the passage contract ticket limitations based on equity and good conscience. The claim is not time-barred.

3. The Court readopts the award to Plaintiff made in the original memorandum opinion, filed March 31, 1988:

Plaintiff is entitled to reimbursement of the medical costs relating to the injury sustained as a result of Defendant's breach of its duty. Plaintiff is entitled to a judgment in the amount of $3,657.60 for medical costs. This amount excludes $75.00 claimed for dental work as there is insufficient evidence to find those costs attributable to the compensable injury.

Plaintiff Rita Patricia Keefe is entitled to a judgment in the amount of $7,000.00 for damages sustained in her fall of June 4, 1984, aboard the S/S VERA CRUZ resulting from Defendant's breach of duty to Plaintiff. Of this amount $3,300.00 is attributable to lost wages for the period June 4, 1984 to December 31, 1984, and $3,700.00 is attributable to pain and suffering.

The Clerk of the Court will enter a judgment in favor of Plaintiff Rita Patricia Keefe and against Defendant Bahama Cruise Lines, Inc., in accordance with this order.

DONE and ORDERED.