[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-15297
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cv-22902-JLK

SARAH D'ANTONIO,

Plaintiff - Appellant,

versus

ROYAL CARIBBEAN CRUISE LINE, LTD.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 26, 2019)

Before MARTIN, ROSENBAUM, and NEWSOM, Circuit Judges.

PER CURIAM:

Sarah D'Antonio sued Royal Caribbean Cruise Line, Ltd. ("Royal Caribbean") to recover damages for injuries she suffered after tripping and falling

while on a walkway in the casino area of one of Royal Caribbean's cruise ships. The district court granted summary judgment to Royal Caribbean, and D'Antonio appealed. After careful review, and for the reasons that follow, we vacate and remand for further proceedings.

## I.

On the last night of her cruise aboard the *Freedom of the Seas*, D'Antonio left the dining room with friends to go to a farewell show at the theater.[1] The path from the dining room to the theater took her through the casino on a roughly six-foot-wide tile walkway. A thin metal strip separated the walkway from the carpeted area of the casino, where gaming tables and chairs were located. The walkway at times passed close by tall swivel chairs facing gaming tables on the carpeted area.

According to D'Antonio's deposition testimony, the casino walkway that night was "very crowded." For that reason, she was walking "very close" to its edge when she passed by several chairs at a gaming table. The "next thing [she] knew" she was on the floor and in pain. She did not know what caused her fall, but she thought that "something got caught," stating that either "the chair got caught in [her] shoe or the metal" strip did. Asked to elaborate on what she experienced just before falling, D'Antonio responded, "I was walking along and all of the sudden I was on

---

[1] *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006) ("[O]ur analysis for purposes of summary judgment must begin with a description of the facts in the light most favorable to the plaintiff.").

2

the floor. Whether it was the chair—the chair comes out, there were chairs where you walk along, and the chairs sort of branch out and they have feet rest on them." But she had no specific memory of her foot catching on the metal strip or the chair and did not know what caused her fall.

CCTV footage from above the area where D'Antonio fell depicts a half-circle gaming table situated close to the walkway with the rounded side nearest the walkway. Seven chairs surrounded the table. Several chairs looked as though they were not fully tucked into the table after use, including the middle chair, which sat at the midpoint of the half-circle and therefore closest to the walkway. Due to the angle of the camera and the curvature of the lens, it's not possible to tell whether the back legs of the middle chair extended into the walkway, though it does appear that the backrest of the chair and the back of the seat of the chair protruded some inches onto the walkway. Indeed, within five minutes before D'Antonio's fall, three passengers contacted the back of the chair with their hand or arm while walking past the area on the walkway.

D'Antonio's fall is captured just over eighteen minutes into the video. The video does not depict what caused D'Antonio's fall, but it appears that D'Antonio began to trip at the moment she passed by the middle chair. She then fell forward and to the right, hitting the ground near the transition between the walkway and the

3

carpet. The chair remained in the same position from the beginning of the video until D'Antonio's fall.

Shortly after her fall, D'Antonio signed a guest injury statement on which someone wrote, when asked to "state in detail what happened," that D'Antonio "Fell in Casino tripped on bottom of chair?" D'Antonio had no recollection of providing answers for the guest injury statement and testified that her friend may have filled out the form. The ship's "Medical Secretary" sent an email to the ship's staff stating that D'Antonio had reported an accident to the medical center and that she "Fell at Casino, tripped on bottom of chair." As a result of the fall, D'Antonio suffered a broken right hip, which required surgical replacement, and needed twenty stitches for a laceration to her right knee.

D'Antonio sued Royal Caribbean for negligence under maritime law, asserting that Royal Caribbean breached multiple duties, including failing to maintain the casino walkway in a reasonably safe condition, to inspect the area for hazards, and to warn of tripping hazards. After discovery, the district court struck both parties' expert witnesses and then granted Royal Caribbean's motion for summary judgment, concluding that D'Antonio had failed to produce competent evidence of a dangerous walkway condition or that Royal Caribbean had notice of a dangerous condition. D'Antonio now appeals the grant of summary judgment.

**II.**

4

We review *de novo* the grant of summary judgment, viewing the evidence and drawing all reasonable inferences in favor of the nonmoving party—here, D'Antonio. *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is improper, however, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Guevara*, 920 F.3d at 720 (quotation marks omitted).

### III.

Federal maritime law governs the liability of a cruise ship for a passenger's trip and fall. *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015); *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990) ("[I]f the injury occurred on navigable waters, federal maritime law governs the substantive issues in the case.").

A cruise-ship operator "is not liable to passengers as an insurer, but only for its negligence." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989) (quotation marks omitted). The mere fact of an accident causing injury is insufficient to establish that a dangerous condition existed. *E.g.*, *Looney v. Metro. R. Co.*, 200 U.S. 480, 486 (1906) ("A defect cannot be inferred from the mere fact of an injury. There must be some proof of the negligence.").

5

To prevail on a maritime negligence claim, a plaintiff must show that "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).

"Under maritime law, the owner of a ship in navigable waters owes passengers a duty of reasonable care under the circumstances." *Sorrels*, 796 F.3d at 1279 (quotation marks omitted). That standard requires "as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe*, 867 F.2d at 1322. Thus, a cruise-ship operator's liability often "hinges on whether it knew or should have known about the dangerous condition." *Guevara*, 920 F.3d at 720 (quotation marks omitted).

At the outset, we reject D'Antonio's argument that she could prevail without showing "that the carrier . . . had actual or constructive notice of the risk-creating condition." *Keefe*, 867 F.2d at 1322. Under *Keefe* and *Everett*, the carrier's actual or constructive notice of the risk-creating condition is a "prerequisite to imposing liability." *Id.*; *Everett*, 912 F.2d at 1358. The carrier's "mere creation or maintenance of a defect" alone is not enough to establish liability unless a jury could infer actual or constructive notice. *Everett*, 912 F.2d at 1359 (holding that the court erroneously told the jury that a cruise ship operator could be liable for negligence

without actual or constructive notice as long as it "negligently created or maintained its premises"). D'Antonio claims that *Everett* does not control because it addressed jury instructions, whereas this case comes before us at summary judgment. But regardless of the procedural posture, *Keefe* and *Everett* established the legal standard that we must apply here. And under that legal standard, D'Antonio must present sufficient evidence for a reasonable jury to find that Royal Caribbean had notice in order to get past summary judgment.

Turning to the evidence before us, D'Antonio identifies two potential causes of her fall. Her original theory, and what was pled in the complaint, was that she tripped on a metal strip or threshold at the transition between the tile walkway and the carpet. She has largely abandoned that theory, however, and now mostly contends that she tripped on the legs of a chair that, because the chair was not pushed back under the gaming table after use, protruded into the walkway.[2]

Viewing the evidence in the light most favorable to D'Antonio, we conclude that summary judgment should have been denied, though the matter is close. To begin with, a jury could credit D'Antonio's testimony that she tripped because "something got caught" on her shoe as she was walking along the casino walkway.

---

[2] The district court refused to permit D'Antonio to amend her complaint to allege that she may have tripped on a chair leg in addition to the metal strip. For that reason, Royal Caribbean maintains that D'Antonio is bound by the allegations in her complaint and that we should consider only whether sufficient evidence supports D'Antonio's allegation that she tripped on the metal strip. But despite denying leave to amend, the district court then considered both alleged causes at summary judgment. As a result, we do the same.

7

In other words, a jury could conclude that D'Antonio tripped on some physical object. While D'Antonio had no specific memory of what caused her fall, so her testimony identifying the cause of her fall is mere speculation, her personal inability to identify the cause of her fall is not fatal to her claim. That's because the record contains sufficient circumstantial evidence for a reasonable jury to conclude that she tripped on a dangerous walkway obstruction.

Specifically, we agree with D'Antonio that a reasonable jury, viewing the CCTV footage in the light most favorable to D'Antonio, could conclude that D'Antonio tripped on a chair leg that extended into the path of the walkway. As we have explained, the video depicts a gaming table and chairs situated close to the casino walkway. The middle chair is close enough to the walkway to cause passengers to make physical contact with it while walking near the walkway's edge. And in the video, D'Antonio begins to fall right as she's going by the middle chair. Viewing this footage in the light most favorable to D'Antonio, and in light of her testimony that she tripped on something while on the walkway, a reasonable jury could conclude that D'Antonio tripped and fell because of a tripping hazard presented by a chair leg extending into the path of the walkway.

Royal Caribbean maintains, and the district court found, that it had no notice of any dangerous condition. We agree that there is no evidence that Royal Caribbean had actual notice of the hazard. We cannot tell from the CCTV footage whether any

crewmember observed the chair, and there is no evidence that the passengers who contacted the middle chair before D'Antonio's fall reported anything to Royal Caribbean.

Nevertheless, we conclude that a reasonable jury could conclude that Royal Caribbean had constructive notice of a tripping hazard. Constructive notice may be shown where "the hazard ha[s] been present for a period of time so lengthy as to invite corrective measures." *Keefe*, 867 F.2d at 1322. The CCTV footage shows that the middle chair sat in the same position for at least eighteen minutes during a time when the walkway was actively in use. We conclude that eighteen minutes was a sufficient period to present a genuine issue of material fact as to whether Royal Caribbean "ought to have known of the peril to its passengers." *Id.*; *see, e.g.*, *Thomas v. NCL (Bahamas), Ltd.*, 203 F. Supp. 3d 1189, 1193 (S.D. Fla. 2016) ("In premises liability cases, for example, a plaintiff may prove constructive notice if he shows that a dangerous condition existed on the floor for a sufficient length of time, which Florida courts have found to be 15–20 minutes.").

## IV.

For the foregoing reasons, we vacate the grant of summary judgment in favor of Royal Caribbean and remand for further proceedings consistent with this opinion.

**VACATED and REMANDED.**

9