[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10388; 19-12033
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cv-21537-FAM

KARL M. BROBERG,
Individually, and as Administrator of the Estate
of Samantha Joyce Broberg, deceased,

Plaintiff-Appellant,

versus

CARNIVAL CORPORATION,
a Panamanian Corporation
d.b.a. Carnival Cruise Lines,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(January 24, 2020)

Before WILSON, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

This case concerns a maritime claim for negligent over service of alcohol relating to the death of Samantha Broberg, who fell overboard while on a Carnival Corporation cruise ship in May 2016.  Her husband, Karl Broberg, brought this case both individually and as administrator of her estate.  After a bench trial, the district court entered judgment in favor of Carnival and against Broberg.[1]  Because we conclude that the district court did not clearly err, we affirm.

I

The evidence presented at trial, which is largely undisputed, established the following.  Shortly before 1:00 p.m. on May 12, 2016, Mrs. Broberg embarked on a cruise with two friends, Sarah Churman and Amy Brady.  By 8:00 p.m. that evening, Mrs. Broberg was served approximately ten drinks.  At 10:30 p.m., Churman and Brady went to a comedy show, while Mrs. Broberg stayed in the ship's casino.  Her friends returned at 11:30 p.m., saw Mrs. Broberg for the last time, and then retired to their cabin.  Mrs. Broberg was served six additional drinks between 11:30 p.m. and approximately 1:00 a.m.

---

[1] In this opinion, we refer to Samantha Broberg as "Mrs. Broberg" and the appellant Karl Broberg as "Broberg."

Churman testified that she had known Mrs. Broberg since childhood and was aware that she had a drinking problem in the past. When Churman returned to the casino at 11:30 p.m., she thought that Mrs. Broberg appeared inebriated because she was acting "animated" and socializing with people at the bar. Churman stated that Mrs. Broberg was not physically out of control and she did not think that Mrs. Broberg was in danger. Similarly, Brady testified that Mrs. Broberg appeared inebriated when they left her around 11:30 p.m., but she was still coherent, "not slipping off her chair or anything," and appeared to be having a good time.

Tammy Ramirez, a passenger on the cruise, testified that she woke up around 12:30 a.m. that evening. She realized her husband was not in the cabin and went to look for him. Ramirez found him at the casino bar around 1:00 a.m. with his arm around Mrs. Broberg. She testified that Mrs. Broberg appeared "totally intoxicated" and that her husband was trying to stabilize Mrs. Broberg. Ramirez took four photographs of her husband and Mrs. Broberg, which show Mrs. Broberg leaning on her elbow at the bar, cigarette in one hand, with Ramirez's husband's arm around her. Churman was shown the photos and testified that Mrs. Broberg appeared more intoxicated in the photos than she had when she last saw her at 11:30 p.m. However, Churman stated that Mrs. Broberg did not appear in danger or at risk in the photos.

3

Lorena Sanchez, a bartender employed by Carnival, testified that she interacted with Mrs. Broberg for about two minutes that evening while serving her drinks. She testified that Mrs. Broberg appeared sober, spoke clearly, was not swaying or staggering, and had no trouble finding her ship credit card or signing her receipt. Sanchez also testified that Carnival servers and bartenders undergo alcohol-service training. They are trained to use a "traffic-light" system for determining whether to continue to serve alcohol. Under this system, they are trained to observe guest behavior and stop serving them if they are falling asleep, swaying and staggering, slurring their speech, or spilling drinks. They are also taught to keep an eye on such a guest and inform security of the situation.

Another Carnival employee, Emil Plesioaica, was a casino supervisor on the night of Mrs. Broberg's fall. He testified that he saw Mrs. Broberg several times that evening and saw her leave the casino around 2:00 a.m. with a man who was later identified as Israel Cervantez. Plesioaica saw them leave the casino and go to an elevator bank leading to the exterior decks. He testified that Mrs. Broberg appeared okay and walking normally. He did not think she was in danger or needed help.

Mrs. Broberg and Cervantez proceeded to an exterior deck alone. A thermal infrared camera aboard the ship showed that Mrs. Broberg sat on the exterior deck railing and fell overboard at 1:57 a.m. Cervantez never reported her fall. Instead,

4

he returned to the bar for another beer.[2]  Churman and Brady realized that Mrs. Broberg was missing the following morning and reported her missing at 11:00 a.m. Carnival reported her as having fallen overboard to the authorities about 15 hours after her fall, but her body was never recovered.

The parties disputed whether Carnival served Mrs. Broberg several additional drinks that evening which are not accounted for by receipts or Mrs. Broberg's ship credit card.  Broberg's toxicology expert opined that if Mrs. Broberg was served those additional drinks, then she would have appeared visibly intoxicated when she was last served drinks around 1:00 a.m.  However, the expert testified that if those drinks were excluded, then she would not have been visibly intoxicated at the time of last service.

## II

After a bench trial, the district court announced its findings of fact and conclusions of law.  The court stated that the key issue was whether "Mrs. Broberg was under the influence of alcohol to such an extent as to be a danger to herself and whether Carnival was on notice that she was so intoxicated, yet continued to serve her alcohol, and as a result, she fell off the ship's deck."  The court found that Ramirez's photos, taken of Mrs. Broberg at around 1:36 a.m., showed a "tired

---

[2] The FBI and the U.S. Attorney's Office investigated the matter and determined that they were unable to charge Cervantez with a crime.

and . . . somewhat-intoxicated Mrs. Broberg," in which she appeared "slouched and with tired eyes," but still holding a cigarette in her hand. The court concluded that she was indeed intoxicated at that time. The court found that Sanchez, who last served Mrs. Broberg at 12:51 p.m., testified that Mrs. Broberg did not appear intoxicated at that time. It also found that Plesioaica testified that Mrs. Broberg did not appear intoxicated when he last saw her. The court found that this was consistent with the testimony of Mrs. Broberg's friends, Churman and Brady, who testified that they thought she was inebriated but appeared "fine" and in control of her faculties at around 11:30 p.m. Accordingly, the court found that Carnival was not on notice that Mrs. Broberg was intoxicated to the point of being in danger.

The district court entered final judgment in favor of Carnival and entered a cost judgment for $4,403.69 against Broberg for Carnival. Broberg separately appealed from the final judgment and the cost judgment; the appeals have been consolidated in this case.

### III

On appeal from a district court's judgment following a bench trial, we review a district court's factual findings for clear error and legal conclusions de novo. *HGI Assocs., Inc. v. Wetmore Printing Co.*, 427 F.3d 867, 873 (11th Cir. 2005). We may reverse a district court's factual findings "if, after viewing all the

6

evidence, we are 'left with the definite and firm conviction that a mistake has been committed.'" *Id.*

Federal maritime law governs this appeal because the alleged tort occurred on navigable waters. *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990). "Under maritime law, the owner of a ship in navigable waters owes passengers a duty of reasonable care under the circumstances." *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015) (internal quotation marks omitted). To prevail on a negligence claim in a maritime case, the plaintiff must prove that "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1253 (11th Cir. 2014).

When evaluating a cruise line's conduct, "as a prerequisite to imposing liability . . . the carrier [must] have had actual or constructive notice of the risk-creating condition." *Keefe v. Bahama Cruise Line Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989) (per curiam). A cruise line's liability "hinges on whether it knew or should have known about" the risk-creating condition. *Id.*

Broberg argues that the district court clearly erred because it failed to account for several additional drinks that Carnival served Mrs. Broberg, and failed

to mention the testimony of Ramirez when it announced its findings of fact and conclusions of law.  Broberg also argues that the district court's finding that Carnival was not on notice of the extent of Mrs. Broberg's intoxication was implausible, given Ramirez's testimony and the photos she took.  Additionally, Broberg contends that the court erred by comparing the testimony of Churman and Brady with the testimony of the Carnival employees because they observed Mrs. Broberg at different times.

Although we have not previously considered a maritime negligence claim based on over service of alcohol, the district court properly framed the question as whether Carnival was on notice that Mrs. Broberg was intoxicated to the extent that she was in danger.  *Keefe*, 867 F.2d at 1322.  The district court did not clearly err in finding that Carnival was not on notice.  At trial, Carnival's employees testified that when they observed Mrs. Broberg in the last hour before she fell overboard, she was not visibly intoxicated.  Churman and Brady testified that she appeared inebriated at 11:30 p.m., but also that she appeared fine and that they were not concerned for her safety.  Indeed, they did not report her as missing for approximately two hours the following morning because they did not suspect that she was in any danger based on her behavior the night before.  Broberg's toxicology expert testified that Mrs. Broberg would have appeared visibly intoxicated if she had consumed every drink that Broberg argued she was given.

8

But the expert also testified that she would not have appeared visibly intoxicated if she consumed only the drinks for which there was documentation.  Broberg correctly asserts that the district court did not reference Ramirez's testimony that Mrs. Broberg appeared very intoxicated in its findings of fact.  That does not mean that the court ignored that evidence.  Moreover, the court mentioned Ramirez's photos and found that her testimony regarding the timing of those photos was likely inaccurate.

Here, viewing all the evidence presented at trial, we are not left with a "definite and firm conviction" that the district court erred in concluding that Carnival was not on notice that Mrs. Broberg was so intoxicated that she was in serious danger.  *See HGI Assocs., Inc.*, 427 F.3d at 873.  Accordingly, we affirm.

**AFFIRMED.**