[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14237
_____

D.C. Docket No. 1:16-cv-25157-KMM

K.T.,

Plaintiff-Appellant,

versus

ROYAL CARIBBEAN CRUISES, LTD.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 24, 2019)

Before ED CARNES, Chief Judge, ROSENBAUM, and HULL, Circuit Judges.

ED CARNES, Chief Judge:

According to the complaint in this case, on the day after Christmas in 2015,

K.T. embarked on a seven-day Royal Caribbean cruise with her two sisters and her

grandparents.  She was a minor at the time.[1]  She alleges that on the first night of the cruise, a group of nearly a dozen adult male passengers  bought multiple alcoholic beverages for her in a public lounge and other public areas of the ship. They plied her with enough alcohol that she became "highly intoxicated," "obviously drunk, disoriented, and unstable," and "obviously incapacitated."  The group of nearly a dozen men then steered her "to a cabin where they brutally assaulted and gang raped her."

She also alleges that everything (other than the assault and gang rape) happened in the view of multiple Royal Caribbean crewmembers, including those responsible for monitoring the ship's security cameras.  But Royal Caribbean's crewmembers allegedly did nothing to stop the group of adult male passengers from buying alcohol for K.T., from getting her drunk, or from leading her away to a cabin while she was incapacitated.  They allegedly did nothing to protect or help her.

---

[1] While the complaint and amended complaints allege that K.T. was a minor when the events took place on December 26, 2015, they do not otherwise specify her age on that date. When she filed her Third Amended Complaint on November 7, 2017, K.T. alleged that she was at least 18 years old by that date, which would mean that she had been 16 or 17 when the events occurred.  In various submissions to the district court and in her opening brief to this Court, however, K.T. asserted that she was only 15 on the day in question.  In any event, according to all of the relevant allegations and assertions, K.T. was a minor, somewhere between the ages of 15 and 17 at the time of the cruise.

2

K.T. sued Royal Caribbean and the district court dismissed her lawsuit under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. This is her appeal.

I.

This Court "review[s] de novo the district court's grant of a motion to dismiss under 12(b)(6) for failure to state a claim." Butler v. Sheriff of Palm Beach Cty., 685 F.3d 1261, 1265 (11th Cir. 2012) (quotation marks omitted). When doing that, "we accept the factual allegations supporting a claim as true and draw all reasonable inferences in favor of the nonmovant." Newton v. Duke Energy Fla., LLC, 895 F.3d 1270, 1275 (11th Cir. 2018). To get past a motion to dismiss, "[t]he plaintiff's [f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Butler, 685 F.3d at 1265 (second alteration in original) (quotation marks omitted). Stated a bit differently, "[t]o survive a motion to dismiss, the plaintiff must plead a claim to relief that is plausible on its face." Id. (quotation marks omitted).

The operative complaint[2] included more claims, but the only ones relevant to this appeal are for Royal Caribbean's negligence, both in failing to warn

---

[2] In its order dismissing K.T.'s claims against Royal Caribbean, the district court treated her Second Amended Complaint as the operative one. K.T. filed her Third Amended Complaint

passengers and prospective passengers of the danger of sexual assault on a cruise ship, and in failing to take action to prevent the physical assault, including the sexual assault, that K.T. suffered.  The district court found that K.T.'s negligence claims against Royal Caribbean failed because they did not sufficiently allege that Royal Caribbean breached its duty of care or that any breach proximately caused her injuries.  Reviewing the matter anew, as we must, we conclude otherwise.

## II.

"In analyzing a maritime tort case, we rely on general principles of negligence law."  Chaparro v. Carnival Corp., 693 F.3d 1333, 1336 (11th Cir. 2012) (quotation marks omitted).[3]  "To plead negligence, a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm."  Id. "Determination of negligence tends to be a fact-intensive inquiry highly dependent

while this appeal was pending to clear up any doubt about diversity jurisdiction.  There is no material difference between the Second and Third Amended Complaints as far as the negligence claims against Royal Caribbean are concerned.  We will treat the Third Amended Complaint as the operative one because it is the last one.

[3] "[F]or federal common law to apply" in a diversity case like this one, the "suit must also be sustainable under the admiralty jurisdiction."  Norfolk. S. Ry. Co. v. Kirby, 543 U.S. 14, 23, 125 S. Ct. 385, 392–93 (2004) (emphasis omitted).  This one is.  See Doe v. Celebrity Cruises, Inc., 394 F.3d 891, 900–02 (11th Cir. 2004).  So we apply federal admiralty law, which is the law "argued by the parties."  Id. at 902.

upon the given circumstances." Souran v. Travlers Ins. Co., 982 F.2d 1497, 1506 (11th Cir. 1993).

K.T. has sufficiently alleged that she suffered actual harm.  And the parties agree that Royal Caribbean owed K.T. a duty of "ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where, as here, the menace is one commonly encountered on land and not clearly linked to nautical adventure."  Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318, 1322 (11th Cir. 1989); see also Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 630, 79 S. Ct. 406, 409 (1959) ("[A] shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew."); Guevara v. NCL (Bahamas) Ltd., 920 F.3d 710, 720 (11th Cir. 2019) ("In this circumstance, a cruise ship operator's liability hinges on whether it knew or should have known about the dangerous condition.") (quotation marks omitted).  The scope of Royal Caribbean's duty to protect its passengers is informed, if not defined, by its knowledge of the dangers they face onboard.  And it allegedly knew a lot.

The allegations are that Royal Caribbean "had experienced and had actual knowledge of . . . assaults and batteries and sexual crimes, and other violence between passengers and between passengers and crew," and "anticipated and

foresaw that crimes would be perpetrated on passengers aboard its vessels." Not only that but Royal Caribbean also allegedly "had experienced and had actual knowledge of minors wrongfully being provided with or allowed to gain access to alcohol, and then becoming the victim of assaults and batteries and sexual crimes, perpetrated aboard its vessels both by crew and by other passengers." It allegedly "knew or should have known, that the high risk to its passengers of crime and injury aboard the vessels was enhanced by [its] sale of copious quantities of alcohol on its vessels," and "knew or should have known of the need to prevent minors wrongfully being provided with or allowed to gain access to alcohol, both by crew and by other passengers."

Those allegations, which we must accept as true for present purposes, are enough to establish that the danger of sexual assault in general and of sexual assault on minors in particular was foreseeable, and indeed was known, to Royal Caribbean. And that foreseeable and known danger imposed on Royal Caribbean and its crew a duty of ordinary reasonable care, which included the duty to monitor and regulate the behavior of its passengers, especially where minors are involved.

The allegations are that Royal Caribbean and its crew breached that duty by failing to: "adequately monitor the public areas" of its ship; "promulgate and/or enforce adequate policies and/or procedures to prevent alcohol being served to minors"; "promulgate and/or enforce adequate policies and/or procedures to

6

prevent sexual assaults on minors aboard [its] ships"; and "intervene to prevent the service of alcohol to a minor and/or to assist an obviously intoxicated minor, when a reasonable and prudent crewmember would have taken action."  The complaint alleges that Royal Caribbean already "had experienced and had actual knowledge of minors wrongfully being provided with or allowed to gain access to alcohol, and then becoming the victim of assaults and batteries and sexual crimes, perpetrated aboard its vessels . . . by other passengers."  And Royal Caribbean allegedly "knew . . . from previous experience[] that the risk of crime and injury against passengers aboard its vessels tended to be greatest in passenger cabins and in bars."

The complaint also alleges that K.T. was a minor on the day in question, so the duty of ordinary reasonable care under the circumstances required Royal Caribbean's crewmembers to do more than simply refuse to sell alcoholic beverages to her directly; the duty also required that they refuse to sell alcoholic beverages to any adult male passengers they knew were "purchas[ing] multiple alcoholic beverages" for K.T.  And it certainly required that crewmembers intervene when they saw a group of nearly a dozen men steering a "highly intoxicated," "obviously drunk, disoriented," "unstable," and "obviously incapacitated" girl to a private cabin.  Even though that allegedly happened "[i]n

7

view of multiple crewmembers and still under surveillance by the ship's security cameras," no crewmember did anything to help K.T. as she was led away.

In sum, the complaint has sufficiently alleged that because Royal Caribbean's crewmembers did nothing to prevent the large group of men from plying K.T. with enough alcohol to incapacitate her and did nothing to stop those men from leading her away to a private cabin, Royal Caribbean breached the duty of ordinary care it owed her. And it is self-evident from the allegations of the complaint that but for Royal Caribbean's breach of its duties of care to K.T. she would not have been brutalized and gang raped. If the allegations are true, Royal Caribbean proximately caused the alleged injuries. The complaint states a claim against Royal Caribbean.

Royal Caribbean protests that allowing liability for its alleged failures would effectively impose strict liability for harm passengers suffer aboard its ships and would make cruise lines insurers of their passengers. We recognize that "[a] carrier by sea . . . is not liable to passengers as an insurer." Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1334 (11th Cir. 1984). But we are not talking about strict liability. We are talking about negligence in failing to act to prevent a foreseeable or known danger. If K.T. can prove the allegations in her complaint, Royal Caribbean is liable for its negligence and that of its crew.

8

III.

We turn now to K.T.'s second theory of negligence, which is based on the claimed failure of Royal Caribbean to warn K.T. and her grandparents of known dangers. "A defendant's failure to warn [a] plaintiff does not breach" the duty of reasonable care under federal maritime law "unless the resultant harm is reasonably foreseeable." Daigle v. Point Landing, Inc., 616 F.2d 825, 827 (5th Cir. 1980). "Liability for a failure to warn thus arises from foreseeability, or the knowledge that particular conduct will create danger." Id.

We have held that a cruise line's duty of "ordinary reasonable care under the circumstances" includes a "duty to warn of known dangers beyond the point of debarkation in places where passengers are invited or reasonably expected to visit." Chaparro, 693 F.3d at 1336 (quotation marks omitted). If a cruise line owes its passengers a "duty to warn of known dangers" at excursion destinations, id. — areas over which it usually has little (if any) control — a cruise line certainly owes its passengers a "duty to warn of known dangers" aboard its ship. See Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318, 1322 (11th Cir. 1989).

The allegations in the complaint demonstrate that Royal Caribbean must have known about the dangers of sexual assaults aboard its ships. See supra pp. 5–6. They are that Royal Caribbean: "anticipated and foresaw that crimes would be perpetrated on passengers aboard its vessels;" "knew, or should have known, that

9

the high risk to its passengers of crime and injury aboard the vessels was enhanced by [its] sale of copious quantities of alcohol on its vessels;" and "knew, or should have known of the need to prevent minors wrongfully being provided with or allowed to gain access to alcohol, both by crew and by other passengers." So Royal Caribbean allegedly had abundant notice and actual knowledge of the dangers that K.T. alleges resulted in the injuries she suffered during the cruise.

In short, the allegations in the complaint are that Royal Caribbean's duty of ordinary care under the circumstances required it to warn K.T. and her grandparents about the dangers of violent sexual crimes aboard its ships, including those committed against minors who have been wrongfully provided with alcohol. And it is alleged that Royal Caribbean breached that duty by not warning its passengers, including K. T. and her grandparents, of those dangers. The complaint also makes the additional (unnecessary but relevant) allegation that "Royal Caribbean willfully chooses not to warn its passengers about rapes and sexual assaults aboard its ships so as not to scare any prospective passengers away."

That leaves the element of causation. The complaint alleges that because of Royal Caribbean's failure to warn K.T. and her family members of the dangers and prevalence of sexual assault on its vessels, including sexual assaults on minors, they were unaware of the need to take any special precautions. It alleges that K.T. was injured due to Royal Caribbean's failure to warn passengers. More

10

specifically, the complaint alleges that "[a]s a direct and proximate result" of Royal Caribbean's negligence and failures, K.T. "was directly and proximately caused to be sexually assaulted and/or physically battered and/or gang raped."  The complaint sufficiently alleges that Royal Caribbean's failure to warn was a but-for cause of the harm K.T. suffered.

"A carrier by sea" is liable to its passengers "for its negligence," Kornberg, 741 F.2d at 1334, and K.T.'s allegations are "more than a mere recitation of the elements of the cause of action." Chaparro, 693 F.3d at 1337.  Her allegations "are plausible and raise a reasonable expectation that discovery could supply additional proof of [Royal Caribbean's] liability." Id.  As a result, "the district court erred in dismissing [the] negligence claim[s]." Id.

## IV.

On its website, Royal Caribbean Cruises assures all who are thinking of sailing with it that "the safety and security of our guests and crew is our highest priority and fundamental to our operations."[4]  It boasts that it "is committed to preventing illegal activity," and "[d]uring each voyage, we remain dedicated to

---

[4] Safety & Security, Royal Caribbean Cruises, https://www.royalcaribbean.com/resources/safety-and-security (last visited July 24, 2019).  In keeping with Eleventh Circuit Internal Operating Procedure 10, "Citation to Internet Materials in an Opinion," under Federal Rule of Appellate Procedure 36, copies of all of the internet materials cited in this opinion are available at this Court's Clerk's Office.

11

safeguarding our guests and crew."[5]  And it promises that the ship's Captain "will take appropriate action to ensure the safety, security and wellbeing of our guests."[6] Not if the allegations of the complaint are true.

Royal Caribbean's website also proclaims that the cruise line has an "ongoing commitment to innovation and continuous improvement in every aspect of [its] business."[7]  Again, if the allegations of the complaint are true, Royal Caribbean's approach to protecting passengers from being sexually assaulted and raped certainly could be improved.  One of the purposes of tort law is to spur along such improvements.

**REVERSED AND REMANDED**

---

[5] Id.

[6] Royal Caribbean Guest Conduct Policy, Royal Caribbean Cruises, https://www.royalcaribbean.com/content/dam/royal/resources/pdf/guest-conduct-policy.pdf (last updated Nov. 12, 2018).

[7] Safety & Security, supra note 4.

12

ED CARNES, Chief Judge, concurring specially:

Of course, I concur in every word of the Court's opinion. See United States v. Hough, 803 F.3d 1181, 1197 (11th Cir. 2015) (Carnes, C.J., concurring) ("Not surprisingly, as the author of the Court's opinion I concur in all of it."). Usually, there is nothing else for the author of a majority opinion to say, but here there is. I write separately to point out that, in addition to K.T.'s allegations, publicly available data (of which we can take judicial notice) reinforces the allegations in the complaint that Royal Caribbean knew or should have known about the danger of sexual assault aboard its cruise ships.

Since 2010 cruise lines have been required to keep records of all complaints about certain crimes — including sexual assault and rape — that occur aboard any of their ships during a cruise "that embarks or disembarks passengers in the United States." 46 U.S.C. § 3507(g)(1)(A); see id. § 3507(k)(1). Cruise lines must report those complaints to the FBI and the Department of Transportation. Id. § 3507(g)(3)(A)(i), (ii). The DOT has a statutory duty to compile the reports and publish quarterly "statistical compilation[s]" about certain crimes — including sexual assault and rape — that occur on board cruise vessels. See id. § 3507(g)(4). Those compilations are called Cruise Line Incident Reports. Cruise Line Incident Reports, U.S. Dep't Transp., https://www.transportation.gov/mission/safety/cruise-line-incident-reports (last updated Apr. 17, 2019).

13

We may take judicial notice of Cruise Line Incident Reports.  See Fed. R. Evid. 201(b), (d); Terrebonne v. Blackburn, 646 F.2d 997, 1000 n.4 (5th Cir. June 1981) (en banc) ("Absent some reason for mistrust, courts have not hesitated to take judicial notice of agency records and reports."); In re PEC Sols., Inc. Sec. Litig., 418 F.3d 379, 388 & n.7, 390 & n.10 (4th Cir. 2005) (taking judicial notice of information in public documents the parties had filed with a federal agency).

And in ruling on a motion to dismiss courts may supplement the allegations in a complaint with facts contained in judicially noticed materials.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S. Ct. 2499, 2509 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (emphasis added); Lozman v. City of Riviera Beach, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013) ("Although this matter is before the court on a motion to dismiss, we may take judicial notice of the court documents from the state eviction action."); Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec., 909 F.3d 446, 464 (D.C. Cir. 2018) ("Among the information a court may consider on a motion to dismiss are public records subject to judicial notice.") (quotation marks omitted).

14

We may take judicial notice of matters that the district court did not.  See

Fed. R. Evid. 201(d) ("The court may take judicial notice at any stage of the

proceeding."); United States v. Greer, 440 F.3d 1267, 1272 (11th Cir. 2006)

(taking judicial notice of a fact even though the district court did not); Coney v.

Smith, 738 F.2d 1199, 1200 (11th Cir. 1984) (noting that although the matter was

"not made a part of the record before the district court, we may take judicial notice

of the same").

The attorneys were put on notice at oral argument that we might consider

Cruise Line Incident Reports, and Royal Caribbean's counsel agreed that

knowledge of those reports could be imputed to Royal Caribbean.  See Oral

Argument at 11:42–14:14.[1]

---

[1] The relevant exchange with Royal Caribbean's counsel went as follows:

Q:    [P]art of the thing that, in my view — and I'm speaking my tentative position to give you an opportunity to convince me to the contrary — part of the thing that does turn it into a cause of action is that it's a sad and often told tale.  Sad and repeated facts.  This is not the first time this has happened on one of Royal Caribbean's vessels.  You're familiar, of course, with the Cruise Vessel Safety and Security Act of 2010 requiring that there be a compilation of incidents, statistical incidents, in which passengers or crew were sexually assaulted, are you not?

A:    I am.

Q:    And your client, of course, is too.

A:    Yes.

15

For all of those reasons, it is appropriate to take judicial notice of the

contents of the Cruise Line Incident Reports.  According to the reports covering

---

Q:    And according to those reports, even if you exclude all those that are still under investigation, in the five-year period before this assault, 2010 to 2015, there were twenty assaults, actually sexual assaults, on your client's vessels, were there not?

A:    I don't know that statistic offhand, but it's possible.

Q:    Sounds reasonable, doesn't it?

A:    Yes.

Q:    Except it's not reasonable to allow that to happen.

A:    I would agree.

Q:    And on all cruise lines, 64.  So that knowledge is imputed to your client, is it not?

A:    I would agree.

Q:    So they were well aware of the risk.  And that's what the plaintiff has alleged.  In paragraph 11:  "knew of the serious risk of crime and injury to its passengers aboard"; "had experienced and had actual knowledge of such crimes and injuries perpetuated aboard its vessels both by crew and by other passengers"; "assault and batteries and sexual crimes and other violence."  And so having that knowledge, you'd agree that under just general negligence law they had an obligation to protect their passengers and crew from those kinds of sexual assaults that they knew happen all too frequently, didn't they?

A:    Well I do think there is a distinction there, and if I may go into it for a minute, your honor —

Q:    I mean, before you go into it, you're telling me they didn't have an obligation to take reasonable efforts, measures, to protect the passengers from that?

A:    Of course.  Under the law their obligation is to provide reasonable care under the circumstances, and that applies in this case just as it would in any other negligence case.

Oral Argument at 11:30–14:14, K.T. v. Royal Caribbean Cruises, Ltd., No. 17-14237 (11th Cir. Nov. 7, 2018).

16

the period from 2010 to September 30, 2015, which was just before the alleged events in this case, cruise lines had reported a total of at least 66 complaints of sexual assault committed by passengers aboard cruises embarking or disembarking passengers in the United States.[2]  See Cruise Line Incident Reports, supra.  And Royal Caribbean itself had reported receiving at least 20 complaints of sexual assaults committed by passengers, which is nearly one-third of the number reported for all cruise lines.  See id.

Those numbers probably understate the number of complaints of sexual assault Royal Caribbean received because the reports include only matters that were "no longer under investigation" by the FBI at the time of the report.  See 46 U.S.C. § 3507(g)(4) (2012), amended by Howard Coble Coast Guard and Maritime Transportation Act of 2014, Pub. L. No. 113-281, § 321, 128 Stat. 3022, 3054 (2014) (codified at 46 U.S.C. § 3507(g)(4)(A)(i) (2018)).  As a congressional staff report explained:

> [W]ith respect to alleged sexual assault crimes, the 13 alleged crimes publicly reported [in the Cruise Line Incident Reports] in 2011 represented only 31% of the 42 alleged crimes reported to the FBI, and in 2012 the 11 alleged crimes publicly reported represented only 38% of the 28 alleged crimes reported to the FBI.

---

[2] These numbers do not include any of the complaints of sexual assaults by passengers that are contained in the Cruise Line Incident Reports for the fourth quarter of 2015 — the quarter in which K.T. embarked on the cruise in question.  I have excluded from the totals those last quarter numbers to ensure that no alleged rapes that occurred after K.T.'s were included.

Staff of S. Comm. on Commerce, Science, and Transp., 113 Cong., Cruise Ship

Crime: Consumers Have Incomplete Access to Cruise Crime Data 11 (2013).

The reports this Court cited in Doe v. Princess Cruise Lines, Ltd., 657 F.3d

1204 (11th Cir. 2011), also support K.T.'s allegations that Royal Caribbean was on

notice a decade before K.T.'s cruise that sexual assaults on cruise ships were a

serious problem.  In that opinion we stated:

> Unfortunately, if congressional reports are to be believed, sexual assaults and other violent crimes on cruise ships are a serious problem. The House Subcommittee on Coast Guard and Maritime Transportation Staff has reported that:
>
>> At a hearing in March 2006 convened by the Committee on Government Reform, cruise industry executives testified that 178 passengers on North American cruises reported being sexually assaulted between 2003 and 2005.  During that same period, 24 people were reported missing and four others reported being robbed.
>>
>> From fiscal year 2000 through June 2005, the FBI opened 305 case files involving "crime on the high seas," and during those five years about 45% of those cases were sexual assaults that occurred on cruise ships.
>>
>> Salvador Hernandez, Deputy Assistant Director of the FBI, testified before Congress in 2007 about sexual and other physical assaults that have taken place on cruise ships: "Sexual assault and physical assaults on cruise ships were the leading crime reported to and investigated by the FBI on the high seas over the last five years, 55 percent and 22 percent respectively . . . ."

Id. at 1208 n.4 (citations omitted).

18

All of this data supplements the allegations contained in the complaint and reinforces the conclusion that the complaint states a valid claim and adequately pleads that, among other things, Royal Caribbean knew or should have known that there was a serious problem of violent crime, including passenger-on-passenger sexual assaults, on cruise ships including its own. The Cruise Line Incident Reports, after all, are based in part on information Royal Caribbean itself submitted.  And it would be absurd to suggest that a multi-billion dollar business like Royal Caribbean was not aware of congressional reports about the problem of sexual assaults aboard its cruise ships.

The allegations of the complaint alone are enough to state a cause of action. If anything else were needed, the reports of which we can take judicial notice would provide it.

19