[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10452

_____

D.C. Docket No. 1:19-cv-20479-KMM

JOANN YUSKO,

Plaintiff-Appellant,

versus

NCL (BAHAMAS), LTD.,
d.b.a. Norwegian Cruise Line,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 12, 2021)

Before MARTIN, GRANT, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

This appeal requires us to decide whether a shipowner is liable under maritime

law when its employee negligently injures a passenger. After falling during a dance

competition on a cruise ship, passenger Joann Yusko sued the ship's owner NCL (Bahamas), Ltd., for negligence. She alleged that her partner in the competition—a professional dancer and cruise ship employee—released her hands as she leaned away from him during a dance move, causing her to fall backward and hit her head on the deck. The district court granted summary judgment in favor of NCL because NCL did not have actual or constructive notice of a risk-creating condition on the ship. But the district court applied the wrong standard. Our precedent assumes—and today we expressly hold—that when a passenger makes a maritime negligence claim against a shipowner based on an employee's negligence under a theory of vicarious liability, the passenger need not establish that the shipowner had actual or constructive notice of a risk-creating condition. Accordingly, we reverse and remand.

## I. BACKGROUND

NCL owns a cruise ship called the *Norwegian Gem*. Near the end of 2017, Yusko—who was 64 years old at the time—boarded the *Norwegian Gem* for a ten-day cruise. One evening during the cruise, Yusko volunteered to participate in a dance competition called "Dancing with the Stars." The "stars" in question were crewmembers employed by the ship, and the competition was an informal event where passengers were judged based on how entertaining they were.

The organizers of the competition paired Yusko with crewmember and

2

professional dancer Michael Kaskie. While dancing, Kaskie performed multiple dance movements in which he spun Yusko while holding her arms. Yusko danced for less than a minute before falling backward and hitting her head during one of those movements. After the fall, Yusko received treatment onboard the ship and completed the cruise. Upon her return home, multiple physicians diagnosed her with a traumatic brain injury as a result of her fall.

Yusko sued NCL in the United States District Court for the Southern District of Florida. In her amended complaint, Yusko alleged that NCL through its agents and employees was negligent in (1) its own failure to exercise reasonable care under the circumstances and (2) Kaskie's failure to act reasonably and in a manner that would keep Yusko safe.

After discovery, NCL moved for summary judgment. In its order granting NCL's motion, the district court cited our decision in *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318 (11th Cir. 1989). Relying on that decision, it held that a shipowner is not liable to a passenger under maritime negligence law unless it has actual or constructive notice of the risk-creating condition that caused the passenger's injury. Because Yusko had not shown that NCL had notice of the risk-creating condition that led to her injury—*i.e.,* Kaskie's allegedly negligent dancing—the district court granted NCL's motion for summary judgment. Yusko timely appealed.

3

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*, viewing all the evidence—and drawing all reasonable factual inferences—in favor of the nonmoving party. *See Amy v. Carnival Corp.*, 961 F.3d 1303, 1308 (11th Cir. 2020). "A grant of summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted) (quoting FED. R. CIV. P. 56(a)). "But it is improper if a reasonable jury could find for the non-moving party." *Id.*

## III. DISCUSSION

We have previously held that a passenger cannot succeed on a maritime negligence claim against a shipowner unless that shipowner had actual or constructive notice of a risk-creating condition. *See Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989). On appeal, Yusko contends that the district court should not have assessed her negligence claim under that standard. She argues that the notice requirement from *Keefe* applies only to maritime negligence claims based on a theory of direct liability. And she argues that her negligence claim is based on a theory of vicarious liability. Under principles of vicarious liability, Yusko argues, NCL is liable for its employee Kaskie's negligence, even if it is not

4

directly liable for anything that it did or failed to do.[1] She therefore concludes that—contrary to the district court's analysis—she was not required to establish that NCL had notice.

We agree with Yusko. We have applied the notice requirement when a shipowner is alleged to be *directly* liable for a passenger's injuries through, for example, the negligent maintenance of its premises. But the notice requirement does not—and was never meant to—apply to maritime negligence claims proceeding under a theory of vicarious liability.

We begin with some basic principles. General maritime law governs tort claims, like this one, that arise on ships sailing in navigable waters. *See Keefe*, 867 F.2d at 1320. The Supreme Court has authorized the lower federal courts to develop this law and formulate "flexible and fair remedies in the law maritime." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1231–32 (11th Cir. 2014) (quoting *United States v. Reliable Transfer Co.*, 421 U.S. 397, 409 (1975)). Congress has neither imposed nor barred tort liability where—as here—a passenger sues a shipowner for its employee's negligence during recreational activities like dancing.

---

[1] NCL argues that Yusko waived this vicarious-liability argument by failing to raise it in the district court. We disagree. Count II of Yusko's amended complaint raises a claim based on the "failure of ship's employee/agent who was the assigned dancing partner of Plaintiff to act reasonably and in a manner that would keep Plaintiff safe." That kind of negligence is the hallmark of vicarious liability. Moreover, in her response to NCL's motion for summary judgment, Yusko argued that the "negligent act that [she] has alleged in this case is NCL's *employee's* dangerous *manner* of dancing" and the "no-notice defense does not apply."

We are therefore "obliged to exercise our broad discretion in admiralty and maritime to develop [the] law" regarding this issue. *Id.* at 1232.

When Congress has not spoken on a maritime matter, we rely on common law principles. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). To prove negligence under common law, a plaintiff must show that (1) the tortfeasor had a duty to protect the plaintiff from a particular injury, (2) the tortfeasor breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm. *See id.* Common law also recognizes vicarious liability and allows an employer to be held liable for its employee's torts if committed during the scope of the employment. *See* Restatement (Third) Of Agency § 7.07 (2006).

For its part, the notice requirement at the center of the parties' dispute originated in *Keefe*, in which we addressed the scope of a shipowner's duty to keep its passengers safe. There, a passenger on a cruise ship slipped and fell on a wet surface while dancing and sued the shipowner for negligently maintaining its floor. *See Keefe*, 867 F.2d at 1320. We had to determine "the correct standard of care against which a shipowner's conduct must be measured." *Id.* at 1321. And we held "that the benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances." *Id.* at 1322. In evaluating the shipowner's duty to exercise ordinary reasonable care in that case, we held, "as a

6

prerequisite to imposing liability, that the carrier [must] have had actual or constructive notice of the risk-creating condition, at least where, as here, the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Id.*

The following year, we reiterated that notice requirement in *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990). There, a passenger on a cruise ship tripped and fell over a metal threshold for a fire door and sued the shipowner for negligence. *Id.* at 1357. Relying on *Keefe*, we held again that, for the passenger's negligence claim to succeed, the shipowner must "have had actual or constructive notice of the risk-creating condition." *Id.* at 1358 (quoting *Keefe*, 867 F.2d at 1322). We then remanded the case for a new trial because the district court had failed to apply *Keefe*'s notice requirement. *Id.* at 1359.

Over the intervening decades, we have continued to require plaintiffs in maritime negligence cases to establish notice on the part of a shipowner. For example, in *Chaparro*, a passenger left a cruise ship to explore an island and was killed by gang-related gunfire. *See* 693 F.3d at 1335. Her parents and brother sued the shipowner for negligently failing to warn her about the island's crime problems, gang violence, and potential for shootings. *See id.* In our analysis, we repeated the notice requirement and held that "a cruise line owes its passengers a duty to warn of *known* dangers beyond the point of debarkation in places where passengers are

7

invited or reasonably expected to visit." *Id.* at 1336 (emphasis added) (citing *Carlisle v. Ulysses Line Ltd., S.A.*, 475 So.2d 248, 251 (Fla. Dist. Ct. App. 1985)).

More recently, we applied the notice requirement in *K.T. v. Royal Caribbean Cruises, Ltd.*, 931 F.3d 1041, 1046 (11th Cir. 2019). There, a cruise-ship passenger sued a shipowner for negligently failing to monitor the ship's public areas and to prevent her from becoming intoxicated and sexually assaulted by other passengers. *Id.* at 1043, 1045. In reversing the district court's decision to dismiss, we noted that the passenger had alleged that the shipowner had actual knowledge of sex crimes and violence between passengers and foresaw that alcohol would be served to minors like the plaintiff to intoxicate and assault them. *Id.* at 1044. Accepting the truth of those allegations as we were required to do, we concluded that the notice requirement had been satisfied. *Id.* at 1045.

Against this backdrop, NCL argues that the district court below correctly required Yusko to establish notice as a part of her negligence claim. This is so, NCL argues, because the notice requirement applies regardless of whether a negligence claim is based on a shipowner's direct negligence or its vicarious liability for an employee's negligence. We disagree.

As an initial matter, NCL's argument erroneously conflates the very different concepts of direct and vicarious liability. Our caselaw's notice requirement defines the scope of a shipowner's duty to exercise ordinary reasonable care to passengers.

8

If a shipowner breaches that duty in a way that injures a passenger, then it may be directly liable to that passenger under maritime law. In both *Keefe* and *Everett*, the passengers sued the shipowners for negligent acts committed by the shipowners themselves—the negligent creation or maintenance of their premises. Similarly, in *Chaparro*, the passenger sued the shipowner for its negligent failure to warn of known dangers on the island where the ship had stopped. And in *K.T.*, the passenger sued the shipowner for negligently failing to monitor its premises and prevent the events that led to her sexual assault by other passengers. In all these cases, the notice requirement governed because the passengers alleged wrongdoing by the shipowner itself.

But the scope of a shipowner's duty has nothing to do with vicarious liability, which is not based on the shipowner's conduct. When the tortfeasor is an employee, the principle of vicarious liability allows "an otherwise non-faulty employer" to be held liable "for the negligent acts of [that] employee acting within the scope of employment." *Langfitt v. Fed. Marine Terminals, Inc.*, 647 F.3d 1116, 1121 (11th Cir. 2011). Unlike a party that is directly liable for a tort, a party that is vicariously liable "has not committed any breach of duty to the plaintiff but is held liable simply as a matter of legal imputation of responsibility for another's tortious acts." Restatement (Third) of Torts: Apportionment Liab. § 13 cmt. b (2000); *see also* 1 American Law of Torts § 4:1 (2021) ("'Vicarious liability' is a term generally

9

applied to legal liability that arises solely because of a relationship and not because of any act of negligence by the person held vicariously liable for the act of another."). In other words, an employer can be held liable under a vicarious liability theory even if it has not violated any duty at all. *See Meyer v. Holley*, 537 U.S. 280, 285–86 (2003) ("The principal is liable for the acts and negligence of the agent in the course of his employment, although he did not authorize or did not know of the acts complained of[.]" (quoting *New Orleans, M., & C.R. Co. v. Hanning*, 15 Wall. 649, 657 (1873)). Accordingly, it makes very little sense to rely on caselaw about the scope of a shipowner's duty where, as here, the shipowner's duty is irrelevant.

NCL's argument is also inconsistent with our precedent about vicarious liability. At first glance, it might seem that the scope of *Keefe* is as sweeping as NCL argues. After all, we did not expressly limit the notice requirement to any particular theory of liability. But our maritime precedent on employee-caused torts plainly contemplates such a limitation.

For starters, we held in *Franza* that a passenger can rely on a theory of vicarious liability "to impute to a cruise line liability for the medical negligence of its onboard nurse and doctor." 772 F.3d at 1228. We acknowledged that, usually, a "shipowner is only liable to its passengers for medical negligence if its conduct breaches the carrier's more general duty to exercise reasonable care under the circumstances." *Id.* at 1233 (internal quotation marks omitted) (quoting *Kermarec v.*

10

*Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959)). But we observed that the plaintiff "d[id] not argue that [the shipowner] violated this duty directly" and that she instead sought to hold it "vicariously liable under the doctrine of respondeat superior, precisely because [its] medical employees allegedly failed to treat her father with appropriate care." *Id.* In approving this theory, we explained that "the Supreme Court and all of the federal circuits have for many years generally applied [vicarious liability] rules across a rich array of maritime cases." *Id.* at 1235. And we noted that "we have regularly permitted passengers to invoke respondeat superior"—a species of vicarious liability—to sue an employer for its employee's negligence. *Id.* at 1234 (emphasis omitted). Accordingly, we held that the shipowner could be held vicariously liable for the negligence of its medical personnel without notice of a risk-creating condition.

Likewise, in *Doe v. Celebrity Cruises, Inc.*, we were asked to determine what standard of care governed when a ship's crewmember sexually assaulted a passenger. *See* 394 F.3d 891, 893 (11th Cir. 2004). We held that shipowners are strictly liable for such intentional torts, regardless of their lack of notice. *See id.* at 913 (relying on *New Jersey Steam–Boat Co. v. Brockett*, 121 U.S. 637 (1887), and *New Orleans & N.E.R. Co. v. Jopes*, 142 U.S. 18 (1891)). We distinguished *Keefe* and *Everett* as "physical-condition cases" that had no bearing on a shipowner's liability for "a crew member assault on a passenger." *Id.* at 910. In doing so, we

11

expressly cabined the scope of those cases—along with their notice requirement—to allow vicarious liability for intentional sexual assaults.

Notwithstanding *Franza* and *Doe*, NCL argues that, unless we import a notice requirement into our vicarious liability caselaw, the notice requirement in our direct liability caselaw will be superfluous. After all, NCL argues, both Yusko and the passenger in *Keefe* were injured while dancing on a cruise ship, so why should the latter's claim potentially fail and the former's claim potentially succeed? Although there is some intuitive pull to this argument, we are ultimately unconvinced. A plaintiff is the master of his or her complaint and may choose to proceed under a theory of direct liability, vicarious liability, or both. It may be true that, in some cases, it will easier for a passenger to proceed under a theory of vicarious liability than under one of direct liability. But common sense suggests that there will be just as many occasions where passengers are limited to a theory of direct liability. Sometimes, as in *Keefe*, a passenger will not be able to identify any specific employee whose negligence caused her injury. In other cases, a passenger will seek to hold a shipowner liable for maintaining dangerous premises (as in *Everett*), for failing to warn of dangerous conditions off-ship (as in *Chaparro*), or for negligence related to the actions of other passengers (as in *K.T.*). Accordingly, we are confident that the notice requirement will have a robust field of operation despite our decision not to extend it to vicarious liability.

12

In short, we hold that a passenger need not establish that a shipowner had actual or constructive notice of a risk-creating condition to hold a shipowner liable for the negligent acts of its employees. Consequently, the district court erred in granting summary judgment based on Yusko's inability to establish that NCL had actual or constructive notice of a risk-creating condition.

## IV. CONCLUSION

For the reasons above, we **REVERSE** the district court's grant of summary judgment in favor of NCL and **REMAND** the case for further proceedings consistent with this opinion.

13