[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-12513

Non-Argument Calendar

_____

JANET FRANCIS,

                                        Plaintiff-Appellant,

*versus*

MSC CRUISES, S.A.,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:18-cv-61463-FAM

_____

Before JILL PRYOR, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

This is a slip-and-fall case arising under admiralty law. While Janet Francis was a passenger aboard the cruise ship *MSC Davina*, she slipped on a piece of watermelon. She then sued the cruise line for negligence under a negligent-maintenance theory. She argued that MSC Cruises, S.A. failed to reasonably inspect the deck material that she fell on, discover that it was unreasonably slippery, and make it safer. The district court granted summary judgment for MSC, holding that MSC lacked a duty to protect Francis because it did not have notice of the dangerous condition. After careful review, we affirm.

## I.

This is our second time evaluating Francis's negligence claims against MSC. We assume the parties' familiarity with the facts as laid out in our previous opinion, *Francis v. MSC Cruises, S.A. (Francis I)*, 835 F. App'x 512, 514–15 (11th Cir. 2020) (unpublished).

In *Francis I*, Francis challenged the grant of summary judgment on her theory of negligent failure to warn, arguing that a reasonable factfinder could find that MSC had constructive notice of the dangerous condition—a slip hazard posed by a piece of watermelon on the floor in a walkway. *Id.* at 516. Concluding that there was no genuine dispute of material fact as to whether MSC was on

notice about the watermelon, we affirmed the magistrate judge's grant[1] of summary judgment on that claim. *Id.* at 517. Francis also argued that the magistrate judge had erred in granting summary judgment *sua sponte* on her negligent maintenance and negligent design theories. *Id.* We agreed, vacating that portion of the summary judgment order and remanding the case for consideration of those claims. *Id.* at 517–19. This appeal concerns only the negligent maintenance claim.

On remand, the district court evaluated the evidence of negligent maintenance Francis submitted in her opposition to MSC's motion for summary judgment and statement of material facts. This evidence focused on the flooring when wet, rather than the existence of the watermelon alone. Francis submitted testimony from an expert, Dr. Reza Vaghar. Vaghar testified that the American Society for Testing and Materials ("ASTM") sets the industry standard for cruise ship walkways. The ASTM prescribes that, to be sufficiently slip-resistant, a walkway surface should have a coefficient of friction ("COF") of 0.6 or higher when wet. According to a test Vaghar conducted on the walkway where Francis fell, the COF of the deck material was less than 0.35 when wet with water. He opined that this low COF meant that the flooring "did not

---

[1] The parties had consented to having a magistrate judge conduct the proceedings in the case. *See* 28 U.S.C. § 636(c)(1).

provide properties of slip resistance under wet conditions" and thus was unreasonably dangerous. Doc. 91-17 at 15.[2]

Francis also submitted evidence of MSC's guidance to crewmembers regarding floor maintenance. First, she submitted evidence of internal guidelines, which told crewmembers to put up "wet floor" warning signs "[w]hen floors in any Guest or crew area are washed, or made slippery by intention or accident (water, wax, food[,] etc.)." Doc. 91-14 at 15. Second, she submitted testimony from a representative for MSC, Ryan Allain. Allain testified that MSC instructed its employees that "water, wax, food, et cetera were known causes of slipping hazards on its ships." Doc. 91-5 at 6.

The district court granted MSC's motion for summary judgment on the basis that, for Francis's negligent-maintenance theory, she failed to show that MSC knew or should have known that the deck material was unreasonably slippery.

This is Francis's appeal.[3]

## II.

We review *de novo* the district court's grant of summary judgment, construing facts and all reasonable inferences therefrom in favor of the nonmoving party. *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). Summary judgment is

---

[2] "Doc." numbers refer to the district court's docket entries.

[3] The district court also granted MSC summary judgment on Francis's negligent design claim. She does not appeal that decision.

appropriate if the record gives rise to "no genuine dispute as to any material fact," such that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Even where the parties agree on the facts, if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Manners v. Cannella*, 891 F.3d 959, 967 (11th Cir. 2018) (alteration adopted) (internal quotation marks omitted). But conclusory allegations and speculation are insufficient to create a genuine issue of material fact. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." (internal quotation marks omitted)).

## III.

On appeal, Francis argues that there was a genuine issue of material fact as to whether MSC had notice that the flooring was a dangerous condition based on her evidence that: (1) the flooring on which she slipped had a COF that fell below industry standards and

(2) MSC warned crewmembers that the floor was "dangerously slippery when wet."[4] Appellant's Br. at 12. We disagree.

Maritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters. *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989). "In analyzing a maritime tort case, we rely on general principles of negligence law." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (alteration adopted) (internal quotation marks omitted). Consistent with those principles, Francis must make four showings to prevail: (1) MSC had a duty to protect her from a particular injury, (2) MSC breached that duty, (3) the breach actually and proximately caused her injury, and (4) she suffered actual harm. *Id.*

This appeal concerns only the first element. As to that one, MSC owed Francis "a duty of ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition."[5] *K.T. v. Royal Caribbean*

---

[4] Although Francis asserts that MSC warned its crewmembers that the flooring was "dangerously slippery when wet," she points to no part of the record confirming this assertion. Appellant's Br. at 12. At most, she points to Allain's testimony that MSC warned its crewmembers that food, water, and wax were known slipping hazards.

[5] Francis's 18-page initial brief contains two sentences arguing that MSC had actual notice of the dangerous condition. She represents that MSC knew

*Cruises, Ltd.*, 931 F.3d 1041, 1044 (11th Cir. 2019) (internal quotation marks omitted). Thus, MSC's liability hinges on whether it "knew or should have known of the dangerous condition." *Id.* (internal quotation marks omitted).

We first must clarify what, exactly, Francis identifies as the risk-creating condition. In *Francis I*, we focused on her allegation that a piece of watermelon was the dangerous condition that caused her fall. 835 F. App'x at 516–17. But we observed that she also alleged that MSC "fail[ed] to reasonably inspect the deck material, discover it was unreasonably slippery, and make it safer." *Id.* at 518. We address here her claim that the flooring, too, created a dangerous condition.

Francis argues that MSC had constructive notice that its flooring was a dangerous condition. "A maritime plaintiff can establish constructive notice with evidence that the defective condition existed for a sufficient period of time to invite corrective measures." *Guevara*, 920 F.3d at 720 (alteration adopted) (internal quotation marks omitted). "Alternatively, a plaintiff can establish

(1) the "flooring outside the buffet [was] 'very slippery when wet,'" and (2) the nearby walkway was "frequently wet or slippery with liquids or food" dropped by passengers. Appellant's Brief at 8. But she has abandoned the issue by failing to cite any parts of the record relevant to her argument or to provide any substantive discussion supporting her position. *See* Fed. R. App. P. 28(a)(8)(A); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682 (11th Cir. 2014) (explaining that an appellant abandons an issue when she "makes no argument and cites no authorities to support [her] conclusory assertions" about the issue in the argument section of his brief).

constructive notice with evidence of substantially similar incidents in which conditions substantially similar to the occurrence in question must have caused the prior accident." *Id.* (internal quotation marks omitted). Further, "[e]vidence that a ship owner has taken corrective action can establish notice of a dangerous or defective condition." *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1265 (11th Cir. 2020).

Francis contends that MSC had constructive notice based on (1) its flooring's failure to meet cruise industry standards for slip resistance and (2) its warning to crewmembers that the floor was "dangerously slippery when wet." Appellant's Br. at 12. "In slip and fall cases involving an allegedly dangerous or defective surface, the question of liability sometimes turns on (or is at least informed by) the surface's coefficient of friction (COF), which is, in layman's terms, 'the degree of slip resistance.'" *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1278–79 (11th Cir. 2015).

Francis's evidence of the flooring's departure from industry standards for COF is insufficient to show that MSC had notice of a dangerous condition. Vaghar testified that the flooring's COF was 0.35. And we have recognized that under industry standards, "walking surfaces shall have a nonskid surface sufficient to provide a . . . COF[] of 0.6 or higher measured when the surface is wet." *Id.* at 1282. But we have not held that failure to meet industry standards, standing alone, puts a cruise line on notice of a dangerous condition.

21-12513                Opinion of the Court                9

Our cases that discuss failure to meet industry standards have relied on other indicators of notice to reverse a grant of summary judgment. And although Francis contends that she has presented additional evidence of constructive notice—namely, MSC's instructions to its crewmembers about known slipping hazards and its policy instructing them to put up wet floor warning signs in the event of those hazards—we disagree. Our cases have required more specific evidence of corrective measures to show constructive notice. *See, e.g., id.* at 1288–89; *Carroll*, 955 F.3d at 1266.

For example, in *Carroll*, the plaintiff asserted that the cruise line negligently maintained a dangerous condition of lounge chairs arranged in a semicircle that protruded into a narrow walkway and that it negligently failed to warn her of the danger. *Carroll*, 955 F.3d at 1263. The district court concluded that the cruise line lacked notice of the danger and granted it summary judgment. *Id.* On appeal, we held that Carroll had created a genuine dispute on both claims—she supported the negligent maintenance claim with expert testimony on the cruise line's failure to meet industry standards and conflicting testimony about the position and arrangement of the chairs at the time of the accident. *Id.* at 1269–70. She supported her failure-to-warn claim with testimony that the cruise line had "adopt[ed] a policy of keeping the chairs in-line and/or in the upright position and instructing employees to ensure that they are not blocking the walkway." *Id.* at 1266. We held that the cruise line's policy of taking these "corrective measures" to mitigate the

"known danger" posed by the chairs was sufficient to withstand summary judgment on the issue of notice. *Id.*

In another example, *Sorrels*, a plaintiff slipped on a cruise ship's teakwood pool deck that was wet from recent rainfall. *Sorrels*, 796 F.3d at 1279, 1281. She presented expert testimony indicating that the flooring in the pool deck area had a COF below industry standards when wet. *Id.* at 1280. The district court excluded the expert's testimony as unreliable and granted summary judgment to the cruise line. *Id.* at 1281–82. Reversing, we held that the expert testimony was reliable and admissible as relevant to establish the cruise ship's standard of care. *Id.* at 1282. We also held that a crewmember's testimony—that the ship "would sometimes post warning signs on the pool deck after it had rained . . . because it was known to her supervisors that the teak floor could be slippery when wet"—was relevant to the question of notice. *Id.* at 1288. This practice suggested that the cruise line knew of the dangerous condition. *Id.* Though evidence of prior similar incidents was relevant to the notice inquiry, we held that the district court properly excluded 22 other slip and fall incidents as dissimilar to the case at hand. *Id.* at 1287–88. We vacated the grant of summary judgment and remanded so the district court could reconsider the evidence. *Id.* at 1289.

Neither *Sorrels* nor *Carroll* relied solely on departure from industry standards to find a genuine issue of material fact on notice of a dangerous condition. And, in those cases, the warning signs

and employee policy that were tailored to the dangerous condition were the bases for finding a factual dispute on notice in those cases.

Here, conversely, MSC's instructions and policies were not tailored to the alleged dangerous condition, and they operate at the highest level of generality—applying throughout the whole ship when the floors are wet. MSC instructed that "water, wax, food, et cetera were known causes of slipping hazards on its ships[,]" Doc. 91-5 at 6,  and required "wet floor" warning signs "[w]hen floors in *any* Guest or crew area" were "made slippery by intention or accident." Doc. 91-14 at 15 (emphasis added). This breadth stands in sharp contrast to the specificity of the warning signs in *Sorrels*, posted "on the pool deck after it had rained." *Sorrels*, 796 F.3d at 1288. It also stands in sharp contrast to the specificity of the policy in *Carroll*—to "keep[] the chairs in-line and/or in the upright position and instructing employees to ensure that they [were] not blocking the walkway." *Carroll*, 955 F.3d at 1266. We cannot agree that MSC's general instructions and policies were evidence from which a reasonable factfinder could determine that MSC was on constructive notice that the flooring where Francis fell was dangerous due to its slip resistance.

Francis's evidence on industry standards, even when combined with MSC's internal guidelines and instructions broadly addressing wet floors, was insufficient to create a fact issue on notice. Our decision might be different if she had shown that MSC knew its flooring fell below industry standards on slip resistance, was aware of substantially similar incidents, or had taken corrective

measures in the same area or on the type of flooring on which Francis fell. As it stands, however, Francis has failed to adduce evidence showing that MSC knew or should have known that its flooring was a dangerous condition due to its failure to comply with industry standards on slip resistance. Accordingly, the district court did not err in concluding that Francis failed to create a triable issue of fact on whether MSC had notice of the allegedly dangerous condition posed by the flooring.

## IV.

For the foregoing reasons, we affirm the district court.

**AFFIRMED.**